JOSEPHINE M. WALDRON ET AL. *v.* THE INTERNATIONAL WATER COMPANY.

May Term, 1920.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed January 8, 1921.

*Duty of Water Company to Furnish Water—Contract by Landlord to Pay for Water Furnished Tenant Not Inferred from Knowledge of Invalid Regulation—Regulation Must Not Contravene Rights of Individuals—Tenant of Building Cannot Be Denied Water by Water Company—No Duty on Landlord to Furnish Water to Tenant—Rights of Persons Entitled to Water Cannot Be Modified by Regulation—Charter Provision Construed—Regulation Requiring Landlord to Pay for Water Furnished Tenant Invalid—Consumer Must Provide Service Pipes from Company's Pipe—Implied Agreement to Continue Certain Service—Regulation Must Not Discriminate.*

1. A contract by the owner of a building to pay for water furnished tenants, according to an invalid and unenforceable regulation of a water company, not assented to by the owner, will not be implied from knowledge of such regulation.

2. A water company charged with the public duty of furnishing water to all the inhabitants of the territory it serves may adopt such reasonable rules for the conduct of its business as do not contravene the rights of individuals conferred by statute or embodied in the common law; and such rules are binding on its patrons, and may be enforced, even to the extent of denying water to those who refuse to comply therewith.

3. In the absence of a statute affecting his rights, the occupant of premises dependent upon a public service corporation for a supply of water cannot be denied because he is a tenant and not the owner; and, likewise, the owner of the premises has no standing to complain of the refusal to supply his tenant, and he cannot be held liable for the bills of his tenant, nor can his premises be subjected to a lien for such charges; and a new tenant cannot be affected by the arrears of a prior tenant.

4. At common law there is no duty or obligation on the part of a landlord to furnish water to his tenant.

5. The rights of inhabitants of a territory, as defined by the charter of a water company charged with the public duty of furnishing them water, cannot be modified by regulation, and so far as the regulation is inconsistent with the provisions of the charter, or deprives a party of a legal right, it is of no effect.

6. A provision in a water company's charter authorizing it to cut off the supply of water when the "owner or occupant" neglects or refuses to pay water rents is not equivalent to a provision that the rents may be charged to the owner or occupant at the option of the company.

7. In the absence of a charter or statutory provision authorizing it, a water company has no power to make a regulation requiring owners of buildings to pay for water used by tenants, and refusing to sell water to the tenants personally.

8. The right of an individual tenant in a building to be supplied with water by a water company is qualified by a duty not only to pay or tender the rent charged but also to provide proper service pipes for conveying the water from the company's line to the tenement occupied by him.

9. Where a water company for several years had voluntarily rendered service through a one-pipe system to the tenants of a building, the law implied an agreement to continue such service, at least until by a proper and reasonable regulation it should call upon all its patrons, without discrimination, to change the means of supply; and tenants would be entitled to a reasonable opportunity to comply with such a regulation.

APPEAL IN CHANCERY. Bill for an injunction to compel the defendant to furnish plaintiffs with a supply of water for domestic and other uses; defendant having shut off the supply.

Heard on the pleadings and findings of fact by the Chancellor at the March Term, 1919, Orleans County, *Wilson*, Chancellor. Decree for the defendant dismissing the plaintiffs' bill with costs.   The plaintiffs appealed.   The opinion states the case.

*E. J. Smith* and *W. H. Cleary* for the plaintiffs.

*John W. Redmond* for the defendant.

TAYLOR, J.   The defendant is a corporation chartered under No. 338, Acts of 1906, for the purpose of furnishing certain villages, including the village of Derby Line, and the inhabitants thereof with water for fire protection, sanitary, domestic, and other uses.   At the time of bringing this bill the plaintiffs were all inhabitants of the village of Derby Line.    Josephine M. Waldron was the owner of a building situated therein known as the Waldron Block.   George F. Waldron, referred to in the findings as Dr. Waldron, is the husband of Josephine M. and has had the control and management of the block since its erection in 1910.   The other plaintiffs, six in number, were tenants of the Waldron block and had been for varying times previous to the bringing of the bill.   At the time here material neither of the Waldrons occupied any portion of the block.   The bill prays for an order compelling the defendant to furnish the plaintiffs with a supply of water for business, sanitary and domestic purposes pending hearing thereon, for a decree determining the plaintiffs' rights in the premises, and for general relief.   The cause was tried by the chancellor, who made findings on which the bill was dismissed.   From this decree the plaintiffs appeal.

The defendant is the only company "of a public nature" supplying water in the village of Derby Line.   It uses the streets of the village for its water mains and has the only supply of water available for the Waldron Block.   Its charter gives it right of eminent domain and the right to lay and maintain its pipes through lands devoted to public use, such as highways and railroads.   It is empowered to sell and furnish water to any person or corporation within the territory specified in its charter for domestic or other purposes, and to lay and maintain the necessary pipes.   In short, it is a public service corporation having the powers and privileges and charged with the corresponding duties and obligations attending such service.

The Waldron Block has two tenements in the basement, two stores on the ground floor, and six separate tenements or apartments above, all supplied with water from the defendant's system. The water is conducted from the street main to the building in a single pipe on which there is a shut-off in the street wholly in the control of the defendant. Inside the basement of the building branch pipes lead off to the several stores and tenements, each controlled by a "stop and waste." The means of access to the pipes in the building is controlled by the tenants. In this connection the chancellor finds that the Waldrons have no objection to the defendant's entering the building at any time to shut off water to individual tenants. At the time the Waldron Block was built the contractor who erected the building, being in need of water to use in his work, arranged with the defendant to run a branch pipe from the street main into the basement of the building. The chancellor states that there was no evidence of any further contract between the defendant and the Waldrons respecting the use of water for the block. We take this to mean that there was no evidence of an express agreement to supply the block with water for domestic use, for the findings show a state of facts from which, if material, such an agreement would be implied.

[1] ⸱ The defendant began to furnish water in the village of Derby Line soon after its charter was obtained, since which time it has supplied water there to people generally. Bills for water rentals are rendered quarterly in advance. Before the spring of 1917 all water rents were collected from tenants where the premises supplied were not occupied by the owner. At that time the defendant adopted the general practice of collecting the rents from owners of apartment houses, though in some instances collections are still made from the tenants. The change in practice was made because of the frequent change of tenants in apartment houses. Prior to April 1, 1917, water was furnished to the tenants of the Waldron Block and the water rents were charged to and collected from them individually. After that date bills were not rendered to the tenants and no rent was received from them. Some of the tenants, including all of the plaintiffs except Ray Sisco (and as to him there is no finding on the subject), offered to pay their water rents to the defendant, but the latter's manager refused to accept payment, stating that Dr. Waldron would render bills to them. Such of the plaintiffs

as were then tenants were not in arrears for water rents, and, so far as appears, the rents for the nonpayment of which the supply of water to the Waldron Block was later cut off accrued thereafter. In July, 1917, the defendant's manager told Dr. Waldron that he must pay the rentals for the whole block or the water would be shut off. Thereafter statements of the rentals due were received by the Waldrons from time to time. It is not found that they rendered bills for water rent to their tenants nor that they received payment on account thereof or in any way consented to the change in the method of collection. The chancellor finds that there was no "specific contract" with reference to the matter between the defendant and the Waldrons. In connection with the other facts found this finding negatives any inference of an implied contract to pay for water furnished to the occupants of the block. If the regulation, not being assented to by Mrs. Waldron, is not valid and enforceable against her, a contract to pay for water in accordance therewith will not be implied from knowledge of its provisions. *Rockland Water Co.* v. *Adams,* 84 Me. 472, 24 Atl. 840, 30 A. S. R. 368.

The defendant continued to supply water for use of the tenants of the Waldron Block until June 4, 1918, at which time the arrearages of rent for water so furnished aggregated about $150. On that date it shut the water off, relying upon the provision of the charter which permits it to do so when the owner or occupant of any building neglects or refuses to pay the water rent. Immediately thereafter this action was brought and a mandatory injunction was obtained directing the defendant to restore the service. Pursuant to this order the water was turned on and has since been supplied as usual, though the injunction was later dissolved. The defendant admits in its answer that there is an abundant supply of water available for the occupants of the Waldron Block.

[2] In the absence of a contract, express or implied, obligating the owner of the Waldron Block to pay for water furnished to tenants, the defendant is forced to rely upon the validity of the action taken in the spring of 1917 regarded as a regulation of its dealings as a public service corporation. No doubt the Legislature may authorize a water company to refuse to deal with tenants of premises which it is under obligation to supply with water. 1 Wyman on Pub. Ser. Corp., § 377; *Turner* v. *Revere Water Co.,* 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657,

68 A. S. R. 432; see *Rand* v. *Marshall,* 84 Vt. 161, 78 Atl. 790. There is no general statute in this State conferring such authority, and it is manifest upon an inspection of the defendant's charter that it does not, in terms at least, authorize the making of the regulation relied upon. The charter requires the defendant to furnish water to the ''inhabitants'' of the village of Derby Line upon terms of equality. But it is claimed that power to make such a regulation should be implied. It is not questioned that a water company charged with the public duty of furnishing water to all the inhabitants of the territory which it serves may adopt reasonable rules for the conduct of its business, and that such rules, so far as they affect its patrons, are binding on them and may be enforced even to the extent of denying water to those who refuse to comply therewith. This power is regarded as an incident to the corporation when not expressly conferred by statute. But corporate regulations of this character must not contravene the rights of individuals conferred by statute or embodied in the common law. 27 R. C. L. 1047, § 27. Such regulations must be reasonable, lawful, and not discriminatory. *State* v. *Waler Supply Co.,* 19 N. M. 36, 140 Pac. 1059, Ann. Cas. 1916 E, 1290, L. R. A. 1915 A, 246. In short, the defendant has implied authority to make and enforce such regulations as are reasonable and not inconsistent with its duty as a public service corporation under its charter or the laws of the State. *Bourke* v. *Olcott Water Co.,* 84 Vt. 121, 78 Atl. 715, 33 L. R. A. (N. S.) 1015, Ann. Cas. 1912 D, 108.

[3] It is a rule of the common law that parties carrying on business which is in its nature public, or which is impressed with a public interest, cannot select their patrons arbitrarily but must serve all who apply on equal terms. *Wagner* v. *City of Rock Island,* 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519. In the absence of a statute affecting his rights, the occupant of premises dependent upon a public service corporation for a supply of water, if otherwise entitled to the service, cannot be denied because he happens to be a tenant and not the owner. 1 Wyman on Pub. Ser. Corp., § 376. Likewise, the owner of the premises has no standing to complain of the refusal to supply his tenant. *Brass* v. *Rathbone,* 153 N. Y. 435, 47 N. E. 905; *Stein* v. *McArdle,* 24 Ala. 344. Neither can he be held liable for the bills of his tenant. *McCarthy* v. *Humphrey,* 105 Ia. 535, 75 N. W. 314. Nor can his premises be subjected to a lien for

such charges.   *Turner* v. *Revere Water Co.*, 171 Mass. 329, 50
N. E. 634, 40 L. R. A. 657, 68 A. S. R. 432.   A new tenant can-
not be affected by the arrears of a prior tenant, for the new
tenant has his own individual right to be served.   *City of
Chicago* v. *Northwestern Mut. Life Ins. Co.*, 218 Ill. 40, 75 N. E.
803, 1 L. R. A. (N. S.) 770; *Covington* v. *Ratterman*, 128 Ky.
336, 108 S. W. 297, 17 L. R. A. (N. S.) 923; *Burke* v. *City of
Water Valley*, 87 Miss. 723, 40 South. 820, 112 A. S. R. 468;
*Poole* v. *Paris Mt. Water Co.*, 81 S. C. 438, 62 S. E. 874, 128 A.
S. R. 923; *Linne* v. *Bredes*, 43 Wash. 540, 86 Pac. 858, 117 A.
S. R. 1068, 6 L. R. A. (N. S.) 707, 11 Ann. Cas. 238.

[4]   At common law there is no duty or obligation on the
part of the landlord to furnish water to his tenant.   A rule that
the water company will deal only with the owners of property
occupied by tenants, if valid, would enlarge the obligation of the
landlord to the tenant to the extent of requiring the former to
furnish the water and pay the water assessments in order that
the premises might be occupied, and, in case the landlord was in
arrears, would deny the tenant the right of water service to
which he is entitled as an inhabitant unless he paid the land-
lord's debt.   Besides, if the company undertakes to limit its
dealings to the owners of property and refuses to have dealings
with tenants, it thereby discriminates between inhabitants of
the municipality who are owners of property and those who are
not.   27 R. C. L. 1454, § 70; *State* v. *Butte City Water Co.*, 18
Mont. 199, 44 Pac. 966, 56 A. S. R. 574, 32 L. R. A. 697; *Farmer*
v. *Nashville*, 127 Tenn. 509, 156 S. W. 189, 45 L. R. A. (N. S.)
240.   See, also, *Brass* v. *Rathbone, supra.*

[5]   The rights of inhabitants as defined by the charter of
a water company cannot be modified by regulation, but so far
as the regulation is inconsistent with the provisions of the
charter it is of no effect.   Pond on Pub. Util., § 206.   So, if
the effect of a regulation, though otherwise reasonable, is to de-
prive a party of a legal right it cannot be upheld.   This, in
effect, was decided in *Bourke* v. *Olcott Water Co.*, 84 Vt. 121,
78 Atl. 715, 33 L. R. A. (N. S.) 1015, Ann. Cas. 1912 D, 108,
where the right of a tenant to contract for water in his own
name was sustained in the face of a rule of the company similar
to that under consideration here.   The charter of the company
provided that "every person" living within the territorial limits
of Wilder "shall be entitled to have and use an ample supply of

water from the mains of said company, by paying a reasonable compensation therefor.'' It was held that the regulation was unenforceable, being in manifest conflict with this provision of the charter. The defendant undertakes to distinguish that case from this, but in principle they are the same. The quoted provision of the charter in the Bourke Case is merely declaratory of the common-law rule applicable to cases where a water company is required to supply the ''inhabitants'' of the municipality.

[6]    The defendant relies upon certain cases that are said to support its claim. But all the cases cited, except possibly *Cox* v. *City of Cynthiana*, 123 Ky. 263, 96 S. W. 456, turn on statutory provisions distinguishing them from the case at bar. The Pennsylvania cases are not in point, as is shown in *Turner* v. *Revere Water Co.* and *Linne* v. *Bredes, supra.* In *City of Atlanta* v. *Burton,* 90 Ga. 486, 16 S. E. 214, it is said that the charter did not contemplate the furnishing of water upon individual credit, but the supply was furnished to buildings and the rent made a charge upon the property. The decision in *Howe* v. *City of Orange,* 73 N. J. Eq. 410, 62 Atl. 777, 75 Atl. 1101, was based on a similar statute. In *Kelsey* v. *Board of Fire and Water Com'rs,* 113 Mich. 215, 71 N. W. 589, 37 L. R. A. 675, specially relied upon by the defendant, the commissioners were expressly empowered by the charter to assess the water rate against the owner or occupant of the building supplied with water and the rate was made a charge upon the premises. The effect of the statute was to make the owner of the premises as well as the tenant liable for water rents, as is pointed out in *East Grand Forks* v. *Luck,* 97 Minn. 373, 107 N. W. 393, 6 L. R. A. (N. S.) 198, 7 Ann. Cas. 1015. A regulation similar to that involved here was upheld on the ground that under the charter the owner could not compel the water company to deal with his tenant. The provision of the defendant's charter by which it is authorized to cut off the supply of water when the ''owner or occupant'' neglects or refuses to pay water rents is not equivalent to a provision that the rents may be charged to the owner or occupant at the option of the defendant, but is entirely consistent with the view that the charter gives any inhabitant of the village of Derby Line who is the occupant of a building the right to demand the service.

[7]    We have said enough to show that under its charter and the laws of this State the defendant was without right in attempting to compel the owner of the Waldron Block to furnish water to her tenants, or to assume the burden of collecting their water rents, and that each inhabitant within the territory served by the defendant, whether an owner or tenant in possession of premises requiring a supply of water, has a right to be supplied and to contract for the service in his own name, subject, however, to such regulations as are consistent with this right and are reasonable and just in the circumstances.

[8]    In determining the rights of the plaintiff tenants in the premises it should be observed that the right of the individual tenant to be supplied with water is qualified by a duty not only to pay or tender the rent charge but also to provide proper means of conveying the water to the tenement occupied by him. *Birmingham Water Works Co.* v. *Brooks,* 16 Ala. App. 209, 76 South. 515.    It is his duty as a consumer to equip his premises properly to receive the service demanded.    *Bartlesville Water Co.* v. *Bartlesville,* 48 Okla. 344, 150 Pac. 118.    The defendant's possession ends at the street line, and it cannot be required to provide pipes extending through private property to the several apartments of the block.    It would be unreasonable to require the defendant to supply individual tenants with water through a service pipe used in common with other tenants, though there are means within the building of controlling the supply to each tenement.    It is not enough that the Waldrons "have no objection" to the defendant's exercising such control within the building.    The premises are in the possession of tenants; and even if the tenants consented to the arrangement, it would not afford the defendant the protection it is reasonably entitled to.    It is entitled to exclusive control of the service pipes at the point of distribution, so that it can supply a tenant who pays his rent without being compelled to supply others who do not pay.    In the absence of some mutually satisfactory arrangement respecting the means of supply, a tenant demanding water for the portion of the premises occupied by him should bring his own service pipes to the street line.    1 Wyman on Pub. Ser. Corp., § 380; *Young* v. *Boston,* 104 Mass. 95.

[9]    But the rights of the parties are affected by the circumstance that the service at the Waldron Block from its inception for a period of about seven years had been rendered

through the existing system of service pipes without objection. While the defendant could at the outset very properly have declined to supply the tenants of the block through a single pipe, having voluntarily accepted the situation, the law would imply an agreement to continue the service, at least until such time as by a proper and reasonable regulation it should call upon all its patrons without discrimination to change the means of supply. *McEntee* v. *Kingston Water Co.,* 165 N. Y. 27, 58 N. E. 785; *Woodward* v. *Livermore Falls Water Dist.,* 116 Me. 86, 100 Atl. 317, L. R. A. 1917 D, 678; *Scott* v. *Dedham Water Co.,* 224 Mass. 398, 113 N. E. 282; 40 Cyc. 793. It would be clearly inequitable for the defendant to discontinue the service at the Waldron Block without giving the parties in interest reasonable opportunity to comply with such a regulation.

It is enough to say that the rights of all can be taken care of by appropriate orders in the court below on remand of the case.

*Decree reversed and cause remanded for further proceedings and decree not inconsistent with the views herein expressed. Let the plaintiffs recover costs in this Court and the costs below to be there determined.*