Willie **T. PUCKETT,** Appellant,

v.

**CITY OF MULDRAUGH,** Kentucky, et al.,
Appellees.

Court of Appeals of Kentucky.

March 11, 1966.

Rehearing Denied June 24, 1966.

Pearl & Trevathan, Louisville, for appellant.

J. R. Watts, Brandenburg, Cubbage & Cubbage, Leitchfield, for appellees.

H. Bemis Lawrence, Louisville, amicus curiæ.

CLAY, Commissioner.

In this declaratory judgment action the basic bone of contention is whether the owner of rental property may be required by a city, operating a water system, to pay for such utility services furnished to his premises. The trial court decided that question in the affirmative and the property owner appeals.

In 1958, the City of Muldraugh (a fifth class city) began the operation of a water

and sewage system. The ordinance in controversy provides in part:

"The rates and charges aforesaid *shall be billed to the owner of the premises* except that upon application by the tenant of any premises, who is not the owner thereof, filed with the Board of Trustees of said city, an application to have water and sewer services rendered to said tenant, renter, or party occupying premises. Application must have a cash deposit in the sum of one hundred dollars ($100.-00) plus five dollars ($5.00) to turn water on." (Our emphasis.)

Appellant owns 20 houses which are usually rented to enlisted personnel from Ft. Knox, the rent ranging from $40 to $65 per month per rental unit. He paid for the installation of separate water meters for each of his rental units, but the service charges have always been billed to him and penalties imposed if not promptly paid.

Appellant poses the principal question as being whether or not a landlord can legally be required to *guarantee and pay his tenant's utility bills*, but that is hedging somewhat on the real issue. The ordinance does not require a property owner to guarantee or pay his tenant's bills—it simply requires him to pay for those services rendered to premises which he owns. Ultimately we believe the question must resolve itself into the right of a city operating a public utility to treat the owner of property as the consumer.

Appellant relies heavily on City of Covington v. Ratterman, 128 Ky. 336, 108 S.W. 297, 17 L.R.A.,N.S., 923. In that case the city refused to furnish water to a purchaser of property until he had paid a delinquent bill of a former tenant of his vendor. The Court properly held that the purchaser could not be required to pay the debt of another. In the course of the opinion it was said that the purchased building could not contract for the water, and further, "[l]iability for the water rent, there-

fore, rests upon the person or persons to whom the water was furnished * * *." This case is not very helpful. Clearly a water service charge is not (in the absence of a lien created by statute) an encumbrance running with the land, but the above quoted language leaves open the question as to just who may be the party *to whom water is furnished.*

Appellant cites other authorities to the general effect that, *in the absence of a statute specifically authorizing the imposition of such liability*, the property owner is not liable to pay for water furnished his tenant. Etheredge v. City of Norfolk, 148 Va. 795, 139 S.E. 508, 55 A.L.R. 781, is cited as a controlling case. There the general factual situation was similar to the one before us. The suit was initiated to recover the amount paid on a delinquent water bill by the owner of the premises. The ordinance in question provided that the owner "shall cause the water rent for the use of water on said premises to be paid". The city billed the water rent not to the owner or the occupant, but to the premises. (This may or may not have significance.)

The court stated that the question involved was whether the imposition of liability on the owner for the water rent had deprived him of his property without due process of law. On this ground the court held the ordinance invalid. As far as we can observe, the Virginia court never came to grips with the question of whether an owner could be reasonably classified as a consumer, or whether there might be an implied contract between the city and the owner which arose when water was supplied to his premises. The court said (page 510 in 139 S.E., page 785 in 55 A.L.R.):

"The authorities are also practically unanimous that the regulation of a water company or ordinance of a municipality which requires the property owner to pay a delinquent bill for water furnished the tenant of the premises, which the owner has not

contracted to pay, is unreasonable and void, unless a lien is given on the premises by statute, *or there is at least some statutory authority therefor by virtue of the charter or otherwise.*" (Emphasis in the opinion.)

There is case law support for this statement, but it refers to a "delinquent" bill as if this was the debt of another, and it assumes the nonexistence of a contractual relationship. The matter of statutory authority we will discuss later. The court went on to say (page 511 in 139 S.E., page 787 in 55 A.L.R.):

"The city can adopt any reasonable plan it chooses to collect its water rents from the consumers who obligate themselves to pay them, in lieu of the present arbitrary and unreasonable policy of attempting to exact such rents from those who are in no way liable, in the absence of state legislative enactment making them so."

This language patently begs the basic question by assuming that (1) the owner is not liable and (2) any attempt to impose liability on him is arbitrary and unreasonable. In our opinion the reasoning in that case is not persuasive.

At this point it may be well to discuss the statutory authority question. The cases almost without exception acknowledge that a *legislature* may authorize a public utility to impose liability for water rents upon the owner of property *without* violating the doctrine of due process. See 43 Am. Jur., Public Utilities and Services, section 62 (page 610); 94 C.J.S. Waters § 302 b, page 212; Waldron v. International Water Co., 95 Vt. 135, 112 A. 219, 13 A.L.R. 340. This would seem to effectively extinguish such ground as a valid legal basis for declaring a public utility regulation invalid. If the matter was really one of *due process*, a state legislature could no more vio-

late this right than could a public utility acting independently.

The matter of legislative authority is not one of due process. It involves the power of the municipality to act. For example, (as some cases indicate) a municipality would probably not have the power to impose a lien on property to secure the payment of a water bill in the absence of statutory authorization. We do not have that question here, although some of the opinions we have read allude to it when denying the right to charge the owner with the water bill. See cases annotated in 13 A.L.R. 346.

■ In this case we find no difficulty on the question of statutory authority. KRS 106.210 grants the city extensive powers to do those things necessary for the acquisition, operation and maintenance of a water system, including the right to charge and collect reasonable rates for services rendered. The method adopted by the city was clearly within the scope of its statutory authority. In Pfau v. City of Cincinnati, 142 Ohio St. 101, 50 N.E.2d 172, it was expressly decided that general powers granted a municipality to operate a water works constitute sufficient authorization for a regulation of this sort.

Having disposed of the due process and the *statutory authority objections* (which were rather obliquely raised by appellant), the remaining question on this point is whether the regulation is arbitrary and unreasonable to the extent it violates section 2 of our Constitution. Just what is arbitrary and unreasonable about a regulation that treats the owner of premises as the consumer and requires him to pay the water bill? After extensive research we have not found a case which satisfactorily explains this.[1]

We may acknowledge that this method of charging and collecting water bills is

1. It may be divined that the ancient sacredness of property ownership lies at the root of the conclusion that it is arbitrary and unreasonable to impose a burden on the owner which customarily has been and may be shifted to the tenant.

not the one customarily adopted by public utilities. We may further recognize that it may result in the changing of lease provisions and in many instances cause inconvenience to property owners. We have before us, however, a legal question. The property owner must take the position that it is unlawful for a municipality to charge him for a public utility service furnished to his premises. Wherein lies the *illegality* of such a regulation?

It is interesting to note here appellant expressly concedes that where two or more residential units are served by a single meter it is not arbitrary or unreasonable to make the owner responsible for the charges. As a matter of fact, one of the cases which tends to support appellant's principal argument specifically found such practice was "reasonable and practicable". Millville Improv. Co. v. Millville Water Co., 92 N.J.Eq. 480, 113 A. 516. See also Cox v. City of Cynthiana, 123 Ky. 363, 96 S.W. 456. This of course is a recognition that the property owner may be classified as the consumer and there is no *legal reason* why a public utility should be required to collect water charges from each tenant who ultimately benefits from the service.

The Supreme Court of Ohio has had no difficulty with this problem. Pfau v. City of Cincinnati, 142 Ohio St. 101, 50 N.E.2d 172. There an ordinance provided that any owner of real estate installing or maintaining water service connections should be considered as agreeing to be liable for the charges whether the accounts for such premises were carried in the name of such owner, or his tenants, or other persons. There was no specific statutory authority to enact such an ordinance. The court could find nothing unauthorized, arbitrary or unreasonable in such a regulation. It is significant that the Ohio court considered the difference immaterial between such an *ordinance* and a similar *statute* upheld in City of East Grand Forks v. Luck, 97 Minn. 373, 107 N.W. 393, 394, 6 L.R.A., N.S., 198, 7 Ann.Cas.1015.

While we have not heretofore considered this question in Kentucky, we have recently decided a case in which the governing principle is the same. In Cassidy v. City of Bowling Green, Ky., 368 S.W.2d 318, a city ordinance required the owners of property to be responsible for garbage disposal service charges which were furnished in conjunction with water and sewer services, the ordinance further providing that water and sewer services could be discontinued if the garbage disposal service charge was not paid. The validity of the ordinance was attacked by landowners whose premises were occupied by tenants. In answering the precise contention here made by appellant we said (page 320 of 368 S.W. 2d):

> "The contention that this service charge may not be imposed upon the property owner when the service is rendered to the tenant is without merit. This service is rendered to the property and the benefits accrue to the owner as well as the tenant. The question is again one of reasonableness and it is certainly not unreasonable to require property owners to contribute to the support of a system which benefits all property and all inhabitants within the City."

We are of the opinion this reasoning is sound and applies to the problem before us. See Rand v. Marshall, 84 Vt. 161, 78 A. 790. The water service is furnished to the property owner. He primarily benefits from this service even though the ultimate consumer is one of his tenants. He is the consumer to the extent water is supplied to and used on his premises. If he requests this service or accepts it, he impliedly agrees to pay the service charge as provided in the ordinance. See Dunbar v. City of New York, 177 App.Div. 647, 164 N.Y.S. 519. There is nothing arbitrary or unreasonable about such a method of collecting water rents, it is not requiring the owner to pay the debt of another, and there is no taking of his property

without due process of law. See Dunbar v. City of New York, 251 U.S. 516, 40 S.Ct. 250, 64 L.Ed. 384. As we have before pointed out, the principal case relied upon by appellant assumed that the obligation was that of another, assumed that the owner could not be liable, and assumed the regulation was arbitrary and unreasonable. None of these assumptions strikes us as justifiable.

■ It might be suggested that since appellant had separate tap-ins on the waterline for each of his rental units, the water flowing through the meter must be charged to the occupant who actually uses it. The nature of a connection, however, has nothing to do with the question of liability for water rent. A meter is simply a device to register consumption. If the owner connects his property to the waterline, he thereby utilizes the service and properly may be charged therefor. It was so held in Dunbar v. City of New York, 177 App. Div. 647, 164 N.Y.S. 519, affirmed 223 N.Y. 597, 119 N.E. 1039; affirmed 251 U.S. 516, 40 S.Ct. 250, 64 L.Ed. 384.

We are aware that it is customary to charge utility services to tenants, and many landlords prefer it that way. Doubtless the ordinance involved will cause appellant inconvenience. On the other hand, and particularly in such a city as Muldraugh, with a very transient population, good business practice would seem to require this method of charging and collecting water bills. It is not arbitrary or unreasonable, and we can find no taint of illegality. The Chancellor correctly decided this issue.

Our next question is whether the city is required to enact an ordinance which would permit the tenant to apply directly for water services for which he would be exclusively responsible. The ordinance in question did contain such a provision, but because it required a cash deposit of $100 the Chancellor held this part of the ordinance "invalid as being arbitrary".

■ Although the city contends to the contrary, we are inclined to follow the Chancellor to the extent that his finding may be construed as meaning that the deposit required was so excessive that for practical purposes it foreclosed a tenant's independent application for service. (This was obviously the purpose of the excessive cash deposit required.) The city's principal contention on this point is that appellant, being the property owner, has no standing in court to assert the possible rights of his tenants.

■ There is substance to this argument, but assuming appellant can raise the question of the reasonableness of this provision, it is, as the Chancellor decided, an academic one insofar as appellant is concerned. His position must be that because this right of a tenant is an illusory one, liability for the water service charges will always be imposed upon him. Since we have decided that this may be done legally by the municipality, he has no valid ground upon which to assert the impairment of his rights when the city has done by indirection what it could do directly. He cannot properly insist that the city relieve him of a liability which it has the authority to impose. The independent rights of tenants with respect to this water service are not before us.

What we have just said disposes of appellant's contention that the trial court should have fixed a reasonable cash deposit charge.

Appellant's final contention is that the city was without authority to make a minimum monthly service charge when the property was vacant and no water was being consumed on the premises. Appellant does not claim the charge ($2.20 a month) is unreasonable but insists no charge whatever could be made. The city in its brief fails to answer this argument but we will attempt to do so.

The right of a public utility to make a fixed or minimum service charge is generally recognized. 43 Am.Jur., Public Utilities and Services, section 51 (page 605); 94 C.J.S. Waters § 300, page 208. Appellant takes the position that this charge is in effect "meter rent" and that such a charge is not proper. There is apparently a conflict of authorities on this question. See 94 C.J.S. Waters § 301, page 209.

Appellant relies on Louisville Gas Co. v. Dulaney, 100 Ky. 405, 38 S.W. 703, 36 L.R.A. 125. The holding in that case was that the public utility could not charge a "meter rent" *because this charge would require the consumer to pay for gas services an amount in excess of the maximum rate which the utility was permitted to charge.* The opinion then goes on to suggest that but for this limitation the Court would have been inclined to approve an additional charge, if reasonable, provided it did not violate the provisions of the corporate charter.

█ We can find nothing illegal in a minimum charge per se, which is compensation for the availability of service. Like other charges, the criterion is one of reasonableness. Appellant does not contend this charge is unreasonable.

The judgment is affirmed.

HILL, Judge (dissenting).

I respectfully dissent from the majority opinion of this Court for the two following reasons: First, because the opinion is unsupported by and contrary to the great weight of authority; and second, because appellee, City of Muldraugh, in good conscience and according to every rule of equity should be estopped from imposing liability on appellant for the individual water bills of the occupants of twenty separate rental houses which he owns.

It should be kept in mind that appellant's twenty units of rental property are not contained in an apartment house but are, in fact, twenty separate houses located on individual lots. (I do not, however, mean to imply that a different rule should apply to apartment houses containing separate apartments.) Also to be remembered is the fact that appellee required appellant to pay $3,000 for twenty tap-ins at the time service was initially provided. I shall refer to this later in connection with the element of estoppel.

The result of the majority opinion is to hold the owner of property liable for utilities furnished to the tenant of the property. To me this result is unjust, unreasonable, confiscatory, and devoid of any rhyme or reason. As authority for my position, I quote from 55 A.L.R., p. 781:

"A municipal corporation engaged in the business of furnishing water to its inhabitants by means of a permanent waterworks stands on the same footing, and has exactly the same right to make and enforce reasonable rules and regulations, as a private corporation upon whom a franchise for that purpose has been conferred, and therefore an ordinance prescribing such regulations has the same force, and no more, as a by-law of a private corporation whose powers are of like character and conferred for the same purpose."

And quoting further from the same page of 55 A.L.R.:

"A municipal ordinance, requiring a property owner, in the absence of contract, to pay rent due the city for water consumed on the premises by a tenant, which is obviously designed to enforce the collection of the water rents, and not a regulation conservative of the tenant's health, with which it is but remotely connected, is not only unreasonable and unnecessary, but unconstitutionally deprives the owner of his property without due process of law."

Following the general rule and the great weight of authority 43 Am.Jur., Public Utilities and Services, section 62 states:

"In the absence of statute affecting his rights, however, the occupant of premises dependent upon a public service corporation for service, if otherwise entitled to such service, cannot be denied because he is the tenant and not the owner of the premises; nor, in the absence of statutory authority therefor, justification under the police power, or a contract with the landlord in such respect, can a public service company by regulation or a municipal corporation by ordinance render a property owner subject to charges for service furnished a tenant."

The general rule is also followed by text writers as indicated in Nichols on Public Utilities Service and Discrimination, p. 215, from which I quote:

"In the absence of a statutory provision there is no lien on the premises occupied by a customer for unpaid bills of a tenant; and a provision in the rules and regulations of a water utilities attempting to make a water bill a lien on property is directed to be entirely without the authority of either the utility or the Commission."

The following states have followed the general rules above announced: State ex rel. Milsted v. Butte City Water Co., 18 Mont. 199, 44 P. 966, 32 L.R.A. 697; Farmer v. City of Nashville, 127 Tenn. 509, 156 S.W. 189, 45 L.R.A.,N.S., 240; City of Galveston v. Kenner, 111 Tex. 484, 240 S.W. 894; Waldron v. International Water Co., 95 Vt. 135, 112 A. 219; Etheredge v. City of Norfolk, 148 Va. 795, 139 S.E. 508, 55 A.L.R. 781. The Waldron case, supra, is discussed in 13 A.L.R., p. 340 from which I quote: "A regulation of a water company unauthorized by statute, requiring a property owner to pay for water furnished his tenant, is unenforceable." It

is true some of the states of this Union have announced a contrary view on the present subject, but the number so doing can be counted on the fingers of one hand with fingers to spare, and I can find no reasoning in any of the opinions justifying their conclusions except those based upon police powers exercised in the interest of health.

The majority opinion wants to know the reason for the general rule above announced. Here are some of the reasons. The City has elected to operate its own utility rather than grant a franchise to a private utility. It does so voluntarily. Clearly, it is bound by the same rules and regulations as a private utility and is in the utility business for a profit. It has its paid employees, protected by workmen's compensation, to install and keep its lines in repair. It employs meter readers to determine the service rendered; it must maintain bookkeepers and clerks to send and collect bills for service. For all this service, the City is authorized to collect not only the cost of the service but a reasonable profit for rendering it.

The City is empowered to require a reasonable deposit to insure against loss on account of delinquent bills. In this connection, I concur with the majority that the lower court was correct in holding that so much of the ordinance as required a $100 deposit for service is arbitrary and unreasonable. Certainly, a deposit of $30 or thereabout would be reasonable and sufficient to protect the City against loss from delinquencies.

The majority opinion forces the owner of a number of houses, or the owner of an apartment house, to go into the utility business, by reading meters, keeping them in repair, and collecting utility bills, as well as many other menial functions incident to the operation of a utility. It is an unjust discrimination against a property owner and an undue burden upon the property. Such a rule cannot be justified by any

rule of right, reason, or justice with which I am familiar.

Under the majority opinion, a lazy or avid city may force owners of rental property or apartment houses to enter the utility business, read meters, keep records, collect bills, and otherwise assume detail duties that have been assumed by the city when it voluntarily undertook to provide those services.

The only justification for invoking such a ridiculous rule as the majority opinion authorizes is to enable the City to collect its bills. The City has another remedy as above pointed out, that is, to require a reasonable deposit. Therefore, it is unnecessary to the welfare of the City to invoke such a rule of law.

So far as my research has disclosed, this Court has not specifically passed on the questions presented in the present case. However, a question was answered in the closely analogous case of City of Covington v. Ratterman, 128 Ky. 336, 108 S.W. 297, 17 L.R.A.,N.S., 923 (1908), wherein the City sought to withhold water service to an applicant, or property owner, because a former owner had not paid his water bill. The following is a quotation from Ratterman:

"In other words, it is asserted that the water rent is a debt or demand against the building to which the water was furnished, for which reason a change of ownership or in the possession of the property cannot interfere with the right of the water commissioners to refuse further use of water to the building until all past due water rents, no matter by whom owing, are paid. *We think the foregoing contention is based upon an erroneous hypothesis.* It assumes that the 'building' in which water was furnished appellee's vendor or his tenants owes or is liable for the water rent in controversy. *As a matter of law and of fact, this is not true. The building could not contract for*

*the water. * * * Liability for the water rent, therefore, rests upon the person or persons to whom the water was furnished, and does not attach to the building or lot*; indeed, such liability could not attach to or be placed upon the building or lot without express authority derived from some legislative enactment, which has not been shown to exist and is not claimed in this case."

My second ground for dissent is based on facts which I think justify the invocation of the doctrine of estoppel against the appellees. Appellees collected from appellant $3,000 for twenty separate tap-ins. It was contemplated by both the City and appellant that separate service would be furnished each separate house and that separate meters would be and were installed. The City undertook to render separate service. Had the property owner known he would later be held liable for all water bills, he could have installed his own meters for much less than the tap-in charge.

After requiring appellant to pay such a stupendous sum for connecting charges in anticipation of separate service, appellee in good conscience should be estopped to claim appellant is liable personally for the payment of his tenants' water bills solely by reason of ownership of the houses.

Neither can liability be attached to the owner of the property upon the cry of financial need of the City, be it a small incorporated hamlet or a great teeming city.

I am mindful of the fact appellee is a small town and that it is near Fort Knox and may not enjoy a large annual revenue. It is also true appellant is a member of the legal profession and that during one year of the pendency of this action he was called by patriotic duty for military service with the 100th Division. But this Court is not concerned with charity or sentiment. It is not the province of this Court to grant an unnecessary and unjustified poverty package to this little City just because of its

size, location, or because appellant is a non-resident of the City.

For these reasons I would reverse the judgment insofar as it authorizes the City to look exclusively to the appellant, property owner, for its water bills. I would affirm the judgment holding the $100 deposit requirement arbitrary and unreasonable with directions to fix an amount in the neighborhood of $25.

My views in the present case are better expressed by a prominent writer in the January 1966 issue of Reader's Digest, page 208, in these words: "And the authorities should make sure that the hand that turns the faucet writes the check."