Herkimer County Indus. Dev. Agency v Village of Herkimer (2019 NY Slip Op 06237)





Herkimer County Indus. Dev. Agency v Village of Herkimer


2019 NY Slip Op 06237


Decided on August 22, 2019


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 22, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, DEJOSEPH, AND NEMOYER, JJ.


168 CA 18-01072

[*1]HERKIMER COUNTY INDUSTRIAL DEVELOPMENT AGENCY, PLAINTIFF-APPELLANT,
v
VILLAGE OF HERKIMER, DEFENDANT-RESPONDENT, ET AL., DEFENDANT. (ACTION NO. 1.) 
IN THE MATTER OF HERKIMER COUNTY INDUSTRIAL DEVELOPMENT AGENCY, PETITIONER-RESPONDENT,
v
VILLAGE OF HERKIMER AND JOHN SPANFELNER, AS CODES OFFICER FOR VILLAGE OF HERKIMER, RESPONDENTS-APPELLANTS. (ACTION NO. 2.) 






HODGSON RUSS LLP, BUFFALO (CHARLES W. MALCOMB OF COUNSEL), FOR PLAINTIFF-APPELLANT AND PETITIONER-RESPONDENT.
LONGSTREET & BERRY, LLP, FAYETTEVILLE (MICHAEL J. LONGSTREET OF COUNSEL), FOR DEFENDANT-RESPONDENT AND RESPONDENTS-APPELLANTS.


 Appeal and cross appeal from an amended judgment (denominated amended order) of the Supreme Court, Herkimer County (Erin P. Gall, J.), entered March 9, 2018. The amended judgment, inter alia, granted that part of the motion of defendant-respondent Village of Herkimer seeking partial summary judgment on the issue of liability on its counterclaim in action No. 1, and granted the petition in action No. 2. 
It is hereby ORDERED that the amended judgment so appealed from is modified on the law by granting in part the motion of defendant-respondent Village of Herkimer (Village) and respondent John Spanfelner, as Codes Officer for the Village, dismissing the petition insofar as it sought to prohibit the Village and Spanfelner from enforcing the New York State Uniform Fire Prevention and Building Code against plaintiff-petitioner and vacating the second decretal paragraph to the extent that it granted such relief, and by granting judgment in favor of the Village as follows:
It is ADJUDGED AND DECLARED that plaintiff Herkimer County Industrial Development Agency is liable to defendant Village of Herkimer for the subject unpaid water rents,
and as modified the amended judgment is affirmed without costs.
Memorandum: Plaintiff-petitioner, Herkimer County Industrial Development Agency (HCIDA), as part of an industrial development project, leased a facility to a corporation (tenant) on properties located in defendant-respondent Village of Herkimer (Village). The tenant operated its business at the facility and incurred charges for water supplied by the Village, but subsequently went bankrupt and left two years of unpaid water rents. As we explained on the prior appeals in this matter, HCIDA commenced action No. 1 seeking a declaration that the real [*2]property taxes levied against it by the Village as a means of collecting the unpaid water rents are void inasmuch as HCIDA is exempt from the payment of such taxes (Herkimer County Indus. Dev. Agency v Village of Herkimer, 124 AD3d 1298 [4th Dept 2015] [Herkimer II]; Herkimer County Indus. Dev. Agency v Village of Herkimer, 84 AD3d 1707 [4th Dept 2011] [Herkimer I]). As relevant here, we declared in Herkimer II that the assessment of such taxes was unlawful based on HCIDA's tax exempt status and that defendant County of Herkimer had properly cancelled the tax lien against properties owned by HCIDA (124 AD3d at 1298). We concluded, however, that Supreme Court erred in dismissing the Village's counterclaim against HCIDA, alleging that HCIDA is responsible for the unpaid water rents as the owner, and we therefore reinstated the counterclaim (id. at 1300-1301).
Thereafter, inasmuch as the vacant properties had fallen into a state of disrepair, the Village issued an order to remedy to HCIDA directing that it remedy various violations of the New York State Uniform Fire Prevention and Building Code (Building Code) (19 NYCRR 1219.1 et seq.; see Executive Law § 377). After HCIDA failed to comply, respondent John Spanfelner, as Codes Officer for the Village, issued an appearance ticket charging HCIDA criminally for violations of the Building Code. HCIDA commenced a proceeding pursuant to CPLR article 78 in action No. 2 seeking several forms of relief including, in effect, a writ of prohibition barring the Village and Spanfelner (collectively, respondents) from enforcing the Building Code against it.
HCIDA appeals and respondents cross-appeal from an amended judgment that, inter alia, granted that part of the Village's motion in action No. 1 for partial summary judgment on the issue of liability on the counterclaim and, in action No. 2, denied respondents' motion to, among other things, dismiss the petition and granted HCIDA's petition by, inter alia, prohibiting respondents from enforcing the Building Code against HCIDA.
HCIDA contends on its appeal in action No. 1 that the Village has no authority to recover directly from it for the unpaid water rents. We reject that contention.
As a general matter, "[w]here a person applies for water for his [or her] premises[,] a contract to pay the rates charged therefor arises" (Security Bldg. & Loan Assn. v Carey, 259 App Div 42, 47 [4th Dept 1940], affd 286 NY 646 [1941]; see generally State Univ. of N.Y. v Patterson, 42 AD2d 328, 329 [3d Dept 1973]). When "the charge . . . depends solely upon the quantity of water used[,] . . . there is merely a voluntary purchase by the consumer from the [municipality] of such quantity of water as [the consumer] chooses to buy . . . , and the obligation to pay therefor must primarily rest upon [the consumer] who buys and consumes the article" (New York Univ. v American Book Co., 197 NY 294, 297 [1910]).
Nonetheless, where, as here, an owner "consents to the tenant's using water in [a] building, supplied through pipes installed by the owner, or continued by the owner, for the purpose of connecting the building with the [municipality's] water main, the owner assents to the [municipality's] supplying water to the tenant for use in the building" (Dunbar v City of New York, 177 App Div 647, 649 [1st Dept 1917], affd 223 NY 597 [1918], affd 251 US 516 [1920]). In the case before us, it appears that the water pipes of the facility that were connected to the Village's water mains "were installed by the owner of the [facility], if not by the present owner, [HCIDA], then by [its] predecessor in title and the connection was never shut off or disconnected by [HCIDA]," and we note that "[t]he only purpose of maintaining a connection between [the facility] and the [Village's] water mains [was] to have the [Village] supply the [facility] with water" (id. at 648). Moreover, the lease contemplated that the tenant would incur utility charges as part of its operation, use, and occupancy of the leased facility. "When such assent [to] or arrangement [for the tenant's use of water] is made, it must be deemed to be made with a view to the existing law" (id. at 649). We therefore must evaluate the existing law at the time of HCIDA's assent to the Village supplying water to the tenant in order to determine whether liability for the unpaid water rents may be imposed upon HCIDA.
Village Law § 11-1116 provides that "[t]he board of water commissioners may adopt rules, regulations and local laws not inconsistent with law, for enforcing the collection of water rents and relating to the use of the water, and may enforce observance thereof by cutting off the supply of water." The Village adopted regulations for enforcing the collection of water rents and relating to the use of water in 1958 (regulations). It is well settled that the language of a [*3]regulation is to be construed in light of the regulation as a whole and according to the ordinary and plain meaning of its words (see Rodriguez v Joseph, 149 AD2d 14, 18 [1st Dept 1989], lv dismissed 75 NY2d 809 [1990]; Matter of Parker v Kelly, 140 AD2d 993, 993 [4th Dept 1988]; see also McKinney's Cons Laws of NY, Book 1, Statutes §§ 94, 97). Here, under the section entitled "Liability for Water Service," Rule No. 7 of the regulations provides that "[a]ll bills, whether for use of water or repairs to water service, are a charge against the owner of the premises or property where the water is used, and said bills will be rendered to the owner or occupant of said premises." Under the same section, Rule No. 8 provides, in pertinent part, that "[a]ll bills for the use of water become due and payable and are a lien on the premises where the water is used" and that "[f]ailure to receive bills for said water services . . . does not relieve the owner and/or consumer from liability to pay." Consistent therewith, Rule No. 22 provides the duration and measure of the owner's liability, stating that "[t]he property owner will be held liable for all water bills rendered" from the setting of the meter until 48 hours (excluding Sundays and holidays) after receipt of written notice of discontinuation of service as measured by the meter or estimated by the Village from the best available information if the meter has incorrectly registered actual consumption. Upon construing the regulations as a whole and according to the ordinary and plain meaning of the words therein, we conclude that the regulations provide for the imposition of liability on property owners for water consumed on such property and supplied by the Village.
HCIDA attempts to rebut the effect of the regulatory language imposing liability on property owners by referencing the language of Rule No. 8 and that part of Rule No. 9 authorizing the Village to discontinue and shut off the water supply for nonpayment. Those attempts are unavailing. Rule Nos. 8 and 9 are consistent, respectively, with Village Law § 11-1118 in providing that unpaid water bills constitute a lien on the property by operation of law and with Village Law § 11-1116 in providing that the collection of water rents may be enforced by shutting off the water supply. Those remedies, however, are available in addition to, and not exclusive of, direct liability against property owners (see City of New York v Idlewild Beach Co., Inc., 182 Misc 205, 207-208 [NY City Ct 1943], affd 182 Misc 213 [App Term, 1st Dept 1944]).
Based on the foregoing, we conclude that HCIDA assented to the Village supplying water to the tenant for use in the facility at a time when the existing law imposed liability on property owners for municipal water service, thereby giving rise to an implied contract for such service between HCIDA and the Village (see Dunbar, 251 US at 517-518; Puckett v City of Muldraugh, 403 SW2d 252, 255-256 [Ky 1966]; see also Sherwood Ct. v Borough of S. Riv., 294 NJ Super 472, 478-479 [Super Ct App Div 1996]). In other words, inasmuch as HCIDA accepted water service that was supplied to and used by the tenant in the facility, it "impliedly agree[d] to pay the service charge as provided in the [regulations]" (Puckett, 403 SW2d at 255, citing Dunbar, 177 App Div at 649; see Dunbar, 251 US at 517-518). Contrary to the contentions of HCIDA and the dissent, the imposition of such liability does not violate common-law principles, nor do the regulations require the property owner to pay the debt of another (see Dunbar, 177 App Div at 649; Puckett, 403 SW2d at 255; see also Sherwood Ct., 294 NJ Super at 479-481). Additionally, unlike the dissent, we do not read the language of the counterclaim so narrowly as to foreclose reliance on the underlying legal theory by which the regulations function to impose liability on HCIDA.
HCIDA further contends on its appeal in action No. 1 that, even if the Village has the authority to hold property owners directly liable for water rents, HCIDA's ownership interest in the facility is insufficient to impose liability on it. We reject that contention. The regulations impose liability for water service on property owners, among others, and we see no reason for excluding owners such as HCIDA from the scope of the regulations (see Adimey v Erie County Indus. Dev. Agency, 89 NY2d 836, 838 [1996], mod for the reasons stated in dissenting in part mem 226 AD2d 1053 [4th Dept 1996]; cf. Matter of Erie County Indus. Dev. Agency v Roberts, 94 AD2d 532, 539-540 [4th Dept 1983], affd 63 NY2d 810 [1984]; Smith v New York City Indus. Dev. Agency, 265 AD2d 477, 478 [2d Dept 1999]).
We thus conclude that the court properly granted that part of the Village's motion in action No. 1 for partial summary judgment on the issue of liability on the counterclaim. The court erred, however, in failing to declare the rights of the parties (see Maurizzio v Lumbermens Mut. Cas. Co., 73 NY2d 951, 954 [1989]; Herkimer II, 124 AD3d at 1299), and we modify the amended judgment accordingly.
As limited by their brief on their cross appeal in action No. 2, respondents contend that the court erred in granting the petition, and denying their motion to dismiss the petition, insofar as the petition sought to prohibit them from enforcing the Building Code against HCIDA. We agree, and we therefore further modify the amended judgment accordingly. We conclude on this record that HCIDA is not entitled to a writ of prohibition inasmuch as that form of relief is "not appropriate where[, as here,] a criminal defendant may raise legal arguments and receive appropriate relief . . . in the criminal prosecution' " (Matter of Henry v Fandrich, 159 AD3d 1409, 1410 [4th Dept 2018], appeal dismissed 31 NY3d 1072 [2018], quoting Cayuga Indian Nation of N.Y. v Gould, 14 NY3d 614, 633 [2010], cert denied 562 US 953 [2010]; see Matter of Whitehurst v Kavanagh, 218 AD2d 366, 368-369 [3d Dept 1996], lv denied in part and dismissed in part 88 NY2d 873 [1996]).
All concur except Dejoseph, and Nemoyer, JJ., who dissent in part and vote to modify in accordance with the following memorandum: In action No. 2, we join all aspects of the majority's determination and reasoning. As the majority explains, a writ of prohibition is unwarranted where, as here, the very argument upon which the petitioner seeks prohibition can be made and adjudicated in a pending criminal case.
In action No. 1, however, the majority strays outside the four corners of the answer and grants a judgment to defendant-respondent Village of Herkimer (Village) on its counterclaim based on a theory of liability that the Village did not assert therein. Moreover, the majority's analysis conflates in rem liability with personal liability, does not address the principles of contractual privity raised by plaintiff-petitioner Herkimer County Industrial Development Agency (IDA), and effectively permits a single municipality to rewrite—to its own advantage—the foundational rules governing the enforcement of contracts. We must therefore dissent in action No. 1.
At its core, the IDA's appeal in action No. 1 calls upon us to resolve a single overarching question: did Supreme Court properly award the Village summary judgment as to liability on its counterclaim? To properly answer that question, we must first identify the nature and scope of the counterclaim at issue. As we read it, the Village's counterclaim asserts a single theory of liability, namely, that the IDA is directly and personally liable to the Village for the unpaid water bills of its tenant, a bankrupt manufacturing company that is not a party to this action. The IDA's liability, the counterclaim explains, is traceable to Regulation 22 of the Village's Water Department, which says in relevant part that "[t]he property owner will be held liable for water bills."
As an aside, we note that the meaning of the term "property owner" in Regulation 22 is unclear. Does that term mean the entity that owned the property when it was first connected to the water-supply system? Or does it mean any entity that subsequently acquired the property? We do not know, because the regulation does not say.
In discerning the scope of the counterclaim at issue, it is also important to emphasize what the counterclaim does not do. It does not allege that the property itself—as opposed to the IDA as its owner—should be liable on an in rem basis for the unpaid water bills. It does not seek to enforce a lien against the property for the unpaid water bills. And it makes no mention of any Village regulation or ordinance other than Regulation 22, much less attempt to base the IDA's ostensible liability on any Village ordinance or regulation other than Regulation 22.
In our view, the counterclaim's theory of direct, personal liability under Regulation 22 does not, as a matter of law, have merit. In other words, the counterclaim's theory of liability does not hold water. The legislature has authorized a village board of water commissioners to "adopt rules, regulations and local laws not inconsistent with law, for enforcing the collection of water rents and relating to the use of the water" (Village Law § 11-1116 [emphasis added]), and we have held that the common law of this State is included within the law to which local regulations must conform pursuant to such a statute (see Lyth v Hingston, 14 App Div 11, 17 [4th Dept 1897]). As we explained in Lyth, the legislatively delegated authority to enact municipal ordinances not "inconsistent with the laws" does not allow a "municipality to adopt ordinances which should be superior to the common law of the [s]tate" (id.). Thus, when an enabling statute explicitly forbids the enactment of municipal ordinances at odds with state law, as Village Law § 11-1116 does here, "it is not within the province of the municipal assembly to create a cause of [*4]action" if, "[u]nder the general law [i.e., the common law] the owner owed no duty and was under no liability . . . under such circumstances" (Koch v Fox, 71 App Div 288, 294 [1st Dept 1902]). Put simply, when the legislature has denied a municipality the power to enact ordinances inconsistent with state law, the municipality may not create a cause of action or theory of liability inconsistent with, or otherwise unrecognized by, state statute or the common law.
Were it otherwise, municipalities could vary the common law rules governing the enforcement of contracts, thereby creating a chaotic patchwork of inconsistent and conflicting regulations in which a person's rights and obligations under an identical contract and set of facts would depend on the municipality in which the transaction arose. Granting municipalities the power to alter the common law of contracts would cause significant instability in all commercial transactions across the State.
We do not suggest, of course, that a municipality may never create a cause of action in derogation of the common law. Indeed, the legal landscape is replete with municipal enactments that properly supercede the common law (see e.g. Administrative Code of City of NY
§ 8-107). Rather, we argue only that a municipality may not create a cause of action in derogation of the common law where, as here, the municipality's underlying power to regulate derives exclusively from a state statute that prohibits any municipal enactment "inconsistent with law," including the common law.
Unfortunately for the Village, applying Regulation 22 under these circumstances is precisely what Village Law § 11-1116 prohibits—the enforcement of a municipally-enacted cause of action conflicting with the common law of this State. At common law, absent certain quasi-contractual scenarios not implicated or raised here, a plaintiff cannot recover a personal judgment for a debt "against a party with whom it was not in privity," i.e., a party with whom it did not contract (Outrigger Constr. Co. v Bank Leumi Trust Co. of N.Y., 240 AD2d 382, 383 [2d Dept 1997], lv denied 91 NY2d 807 [1998]; see Niagara Foods, Inc. v Ferguson Elec. Serv. Co., Inc., 86 AD3d 919, 920 [4th Dept 2011]; LaBarte v Seneca Resources Corp., 285 AD2d 974, 975 [4th Dept 2001]). This foundational proposition of contract law does not fall by the wayside simply because the subject contract involves the supply of water by a municipal utility. As the Court of Appeals stated, "water rents" are exacted "for water actually used and supplied to [the customer] under an express contract that he [or she] would pay for it at the rates established by the [municipality]" (Silkman v Board of Water Commrs. of City of Yonkers, 152 NY 327, 331-332 [1897]), and a person who did not contract for the provision of water does not become the guarantor for a person who did so contract merely because the noncontracting party happens to own the building in which the water is supplied (see Dunbar v City of New York, 177 App Div 647, 649 [1st Dept 1917], affd 223 NY 597 [1918], affd 251 US 516 [1920]).
In this case, it is undisputed that the water rents at issue were contracted for and incurred solely by the manufacturer tenant, which owned the property at the time it contracted for water from the Village. It is also undisputed that the IDA never contracted with the Village for water, that the IDA never received or used any water from the Village, and that the IDA never agreed to pay for the tenant's water. In short, it is undisputed that the IDA was not in contractual privity with the Village with respect to the disputed water rents. Thus, there can be no dispute that the common law prohibits a direct, personal recovery against the IDA for the tenant's unpaid water bills.
Yet the Village's interpretation of Regulation 22 would seem to impose the very liability prohibited by common law. Indeed, under the Village's interpretation, Regulation 22 does what the common law explicitly forbids: it imposes direct personal liability upon one person for the debts of another without regard to whether he or she contractually agreed to pay those debts. Thus, if applied to these facts, Regulation 22 would abrogate the common-law requirement of contractual privity with respect to the provision of water in the Village. And that is simply beyond the Village's power to do (see Koch, 71 App Div at 294; Lyth, 14 App Div at 17).
The majority's contrary holding is grounded in the proposition that, when a property owner "consents to the tenant's using water in [a] building, supplied through pipes installed by the owner, or continued by the owner, for the purpose of connecting the building with the [municipality's] water main, the owner assents to the [municipality's] supplying water to the tenant for use in the building" (Dunbar, 177 App Div at 649). That proposition is longstanding [*5]and not controversial, and we take no issue with it here. But the majority overlooks the well-defined legal significance of that proposition: it allows the imposition of a lien against the property, not the imposition of personal liability against the property's owner. The First Department—as affirmed by both the Court of Appeals and the United States Supreme Court—wrote just that in Dunbar: "the tenant is liable to the city primarily for the water consumed, and the owner's property is also liable . . . for water furnished to the tenant for use in the building with the owner's assent" (id. [emphasis added]). Dunbar did not hold, as the majority does now, that the owner is personally liable for the tenant's unpaid water bills in the absence of contractual privity. Quite the opposite, the First Department in Dunbar rejected the very rule adopted today by the majority, i.e., "that the obligation of the owner was that of a surety [to the tenant/customer] and to be construed according to the rules of suretyship" (id.). Dunbar's analysis makes perfect sense in its own context because, in that case, the City of New York sought to foreclose a lien against a property, not to hold the property's owner personally liable for the debts of her tenant.
The majority's reliance on Dunbar and other lien-law cases to support the imposition of personal liability in this case conflates in rem with personal liability, and it assumes that a property's in rem liability is necessarily coextensive with the personal liability of its owner. That is not the law; as we wrote decades ago, "[e]vidence which warrants an inference of consent sufficient to give a lien is not necessarily sufficient to warrant an inference of an agreement, express or implied, to pay" (Weinheimer v Hutzler, 234 App Div 566, 566 [4th Dept 1932], affd 260 NY 687 [1932]; see generally Ferrara v Peaches Café LLC, 32 NY3d 348 [2018], affg 138 AD3d 1391 [4th Dept 2016]). So too here; although the evidence might warrant an inference that the IDA, as the property owner, sufficiently consented to the provision of water so as to give rise to a valid lien against the property, it is undisputed that the IDA never agreed, expressly or impliedly, to pay for the water bills of its tenant. In fact, the contract between the IDA and the tenant explicitly made the tenant solely responsible for all utility bills. To hold the IDA personally liable notwithstanding the contrary provisions of its contract with the tenant is particularly unjust given that the IDA never received any water bills from the Village until after the Village's claim against the tenant for those bills had failed in bankruptcy court.
Unlike the majority, we cannot read the counterclaim to assert any theory of liability based on Regulation 8 or Regulation 9 of the Herkimer Village Water Department. In any event, even if—as the majority posits—those regulations operated to create a lien against the property as a matter of law, any such lien would not be self-executing. It would require an action to foreclose the lien, which is not part of the Village's counterclaim before us. Thus, even if an unrecorded lien exists, the Village's failure to seek any relief predicated on such a lien reinforces our view that lien-law cases are inapposite in resolving this appeal.
In closing, we return to the language of the counterclaim. It does not seek in rem liability, it seeks personal liability. The majority's analysis makes a compelling case for imposing in rem liability against the property at issue, but that is not what the Village sought in its counterclaim. Rather, the Village alleged only a theory of liability upon which it cannot prevail, namely, personal and direct liability against the IDA to recover a debt for which the IDA never contracted. We are constrained by the language of the counterclaim, and we are not free to grant judgment on a theory not pleaded or argued below (see generally Misicki v Caradonna, 12 NY3d 511, 518-520 [2009]). And because the only theory pleaded and argued below is legally meritless, we must dissent in part and vote to modify the amended judgment by denying the Village's motion in action No. 1 insofar as it sought summary judgment on the issue of liability on the counterclaim, granting the IDA's motion in action No. 1 insofar as it sought a judgment declaring that the IDA is not personally liable to the Village for the subject water rents, and granting the motion of respondents-appellants in action No. 2 insofar as it sought to dismiss that part of the petition seeking to prohibit them from enforcing the New York State Uniform Fire Prevention and Building Code against the IDA.
Entered: August 22, 2019
Mark W. Bennett
Clerk of the Court