V. W. RAND *v.* W. W. MARSHALL.

November Term, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed January 16, 1911.

*Municipal Corporations—Electricity—Powers of Village—Supplies*
*to Private Consumers—Liability of Owner for Tenants' Bills*
*—Lien on Owner's Property for Tenants' Charges—Constitu-*
*tionality of Charter—Rates—Collection and Assessment—*
*Assessment by Village.*

A municipality cannot furnish electric lights for private use unless specially authorized, but such authorization may be by necessary implication.

11

The charter of the village of Hardwick authorizes it to establish rates for the use of electric lights, which shall be chargeable to the owners of the property supplied, unless otherwise agreed to by the commissioners and the owners, and which shall be a lien on the property, and be collected in the same manner as any tax assessed by the village; and provides that the trustees of the village shall assess the rates and provide for their collection; that when the rates become due the trustees shall make an account thereof, giving the names of the payers and the amounts due, and deliver the same to the village treasurer; and that the charges collected shall be used to pay interest on and extinguish the debt incurred in providing the plant; and authorizes the village to extend the rates "to any description of property or use". *Held,* that the village was authorized to furnish electric lights to its inhabitants for private use, and that the owner of property supplied with such lights is liable for the electricity used by his tenants.

Express authority granted by an amendment to a village charter to sell electric lights outside the corporate limits does not negative a previous implied authority to furnish electricity to private property within the village, especially where the amendment was enacted four years after the other provisions went into effect.

The provision of a village charter that charges for electric light may be collected of the owners of the property supplied therewith, though used by tenants, and making the charges a lien on such property, is not unconstitutional, as the owner may protect himself from liability by directing that no electric light be furnished.

In an action by a village against the owner of property to collect charges for electric lights used by tenants, evidence considered, and *held,* to tend to negative the claim that electricity was furnished the tenants in disregard of the owner's direction to the contrary.

Where the rates charged for electric lights were determined by vote of the village, and the amount used was taken from the meter readings of the electrician, and the figures entered on the register by the treasurer under the direction of the trustees, but generally in their absence, and the trustees had general oversight of the books and accounts, there was a sufficient compliance with the requirement of the charter that the trustees should assess the rates and provide for their collection.

ASSUMPSIT for the collection of electric light rents, begun by trustee process under P. S. 644 as for the collection of taxes. Plea, the general issue. Trial by jury at the December Term, 1909, Caledonia County, *Stanton,* J., presiding. Verdict ordered for the defendant, and judgment thereon. The plaintiff excepted. The opinion states the case.

*B. E. Bullard* and *M. G. Morse* for the plaintiff.

The assessment made under the direct supervision of the trustees in the manner shown by the evidence was a sufficient compliance with the requirement of the charter that the trustees should assess the rates and provide for their collection. 2 Beach Pub. Corp. 1183; *Bertram* v. *Bridgeport,* 55 Conn. 122; *People* v. *Lohnas,* 54 Hun. 604; *Hitchcock* v. *Galveston,* 96 U. S. 341; *Ray* v. *City,* 90 Ind. 567; *Davis* v. *Saginaw,* (Mich.) N. W. 667; *Albertson* v. *Cicero,* 129 Ill. 226.

*Walter A. Dutton* for the defendant.

It is the intent of the charter to charge the owner for tenants' lights and make such charges a lien on the owner's property only when the lights were furnished by the owner to the tenant. Any doubt that may be raised on this question by reason of the language of the charter must be resolved against the village. *Heiskell* v. *Mayor etc. of Baltimore,* 65 Md. 125, 57 Am. Rep. 308; 20 Am. & Eng. Enc. of Law 665, 1140 and Note 1; 28 Cyc. 265. The contrary construction operates to take the property of one man to pay the debt of another, which would be unconstitutional. *Wilkinson* v. *Leland,* 2 Peters 267; *Webster* v. *Cooper,* 14 Howard 488; *Ames* v. *Port Huron Log Driving Co.,* 11 Mich. 147, 83 Am. Dec. 731; *Snow* v. *Sandgate,* 66 Vt. 541; *In re Barre Water Co.,* 62 Vt. 27; *Taylor* v. *Porter,* 4 Hill 140, 40 Am. Dec. 274, and Note 280.

The charter does not authorize the village to furnish lights for private use to its inhabitants. There is no express provision to that effect, and "Municipal corporations possess only such powers as are expressly granted, or implied because necessary to carry into effect such as are expressly granted." *Village of Swanton* v. *Town of Swanton,* 81 Vt. 152; 2 Abbott Municipal Corp. §§1206, 2092.

. MUNSON, J. The plaintiff sues as collector of the village of Hardwick to recover of the defendant by trustee process an amount due the village for electric lights used by the defendant's tenants, and excepts to the direction of a verdict for the defendant. The defendant questions the authority of the village to supply its inhabitants with electric lights, the construc-

tion claimed for the provision relating to owners, the constitutionality of the provision if construed as claimed, and the regularity of the proceedings.

The amended charter of the village authorizes it to establish rates or rents to be paid by the users of electric lights, and provides that such rates or rents shall be chargeable to, and may be collected of, the owners of the property supplied with such lights, unless otherwise agreed by the commissioners and the owners, and that the same shall be a lien and charge upon the buildings, lots and other property so supplied, and may be collected in the same manner as any tax assessed by the village. Acts 1898, No. 192, §5. Section four of the same act provides that the trustees of the village shall assess the rates and provide for their collection, and a later act provides that when the rates become due the trustees shall make or cause to be made an account or bill thereof, giving the names of the several payers and the amounts due from each, and deliver the same to the treasurer of the village. Acts 1902, No. 220, §5.

A municipality cannot furnish lights for private use unless specially authorized. *Swanton Village* v. *Highgate*, 81 Vt. 152. But we think a provision may be sufficiently explicit without containing words of direct authorization. This charter declares that the charges for electric lighting are to provide an income for paying the interest on and ultimately extinguishing the debt incurred in providing the electric plant. This necessarily implies a sale of lights to users other than the village. Moreover, in providing for the control of rates, the village is authorized to "extend them to any description of property or use." No argument against the construction claimed by the village can be drawn from the express authorization to sell lights to persons outside the corporate limits, for this authority was not conferred until four years after the other provisions went into effect. We think the village is authorized to furnish electric lights for private use.

The defendant contends that the provision making the rates chargeable to and collectible from the owner of the property supplied and a lien upon the property, was intended to charge the owner and the property only when the lights were supplied to such owner in person. It seems clear that more than this

was intended; for if nothing more was intended the clause giving the right to charge and collect was needless. The provision was evidently intended to secure payment for lights used by tenants through a claim on the landlord.

In considering the validity of the provision making the rates chargeable upon the owner and his building, regard must be had to the relations existing between the lessors of tenements and the village. The lessor is the owner of the property. The wires are put in by the village at the owner's request. Both parties act in the expectation that the electricity will be used by the occupant of the building. The facilities afforded increase the rental value of the building, but their use is not essential to its occupancy. The village is not obliged to furnish electricity until paid for, and so may refuse to furnish it until payment is secured to its satisfaction. The owner can protect himself from liability at any time by directing that no electricity be furnished. In view of these considerations, we think this provision of the charter involves nothing that impairs the constitutional rights of the owner. See *East Grand Forks* v. *Luck*, (Minn.) 6 L. R. A. (N. S.) 198 and note; *Provident Institution* v. *Jersey City*, 113 U. S. 506.

The plaintiff's evidence tended to show that defendant's tenements were wired and equipped for electric lighting by the village at his request; that before the work was done the village informed defendant that if it was done he would be held in accordance with the charter for the payment of all rents furnished to his tenants that they did not pay, and that if he would not accept these conditions the work would not be done, and that defendant thereupon ordered it done. Plaintiff's evidence also tended to show that before six of the seven items in suit had accrued the trustees told defendant that they would consider him responsible for the lighting furnished his tenants; that in this connection defendant told the trustees that if they did not want to furnish any of his tenants they could cut them off; that the trustees replied that they were entitled to a better notice than that—that if the defendant had any tenants that he did not want to be responsible for he could tell the trustees and they would cut them off at any time, but that they could not accept a general notice to cut off all his tenants unless he wanted

them all cut off; but that defendant did not say he wanted them all cut off, and that the trustees then told him they should consider him responsible under the charter the same as any other landlord. This was at least evidence tending to negative any claim that the electricity sued for was furnished the tenants in disregard of a direction of the owner to the contrary.

The rate was determined by vote of the village. The amount used was taken from the meter readings of the electrician. The figures were entered on the register by the treasurer as given by the electrician and called back to him for comparison. This was done under the direction of the trustees, but generally not in their presence; and the trustees had general oversight of the books and accounts. The defendant claims that the provision that the trustees shall assess the electric light rates requires that they do this work personally, but we think the assessment as made was sufficient.

*Judgment reversed and cause remanded.*