**Edith WEST, Nathan Barbour and Jane Barbour**

v.

**VILLAGE OF MORRISVILLE and Robert Bourne, Richard Hill, Dayton Wakefield, Howard Morse, Bruno Loati, individually and collectively as its Water and Light Commissioners and Richard Sargent, Mary Kuntsman, Duane Sprague, Andrew Jensvold, Richard Shanley, individually and collectively as its Board of Trustees and Robert Page, its Water and Light Superintendent and William Pickens, its Water and Light Assistant Superintendent and C.R. Whittier, its Agent and Tax Collector.**

Civ. A. No. 81–8.

United States District Court,
D. Vermont.

April 28, 1983.

Gary H. Barnes, Downs, Rachlin & Martin, Burlington, Vt., for plaintiffs.

Mary Ellen Clerkin, Paul, Frank & Collins, Burlington, Vt., for defendants.

COFFRIN, Chief Judge.

This action is before the court on cross motions for summary judgment. Plaintiffs have alleged violation of their rights to due process and equal protection under the Fourteenth Amendment to the United States Constitution caused by defendants' practice of seeking payment from property owners for delinquent electric charges incurred by tenants.[1] In addition to their constitutional claims, plaintiffs have asserted other defenses to payment which we consider to be in the nature of pendent claims. The parties have entered into an extensive stipulation of facts so we need not set forth the factual background. In general terms, the controversy is over the right of the defendant Village of Morrisville Water & Light Department to hold the plaintiffs, who are landlords and property owners, liable for charges from electric service provided to plaintiffs' tenants at the tenants' requests and in the tenants' names. We will first discuss the constitutional claims advanced by all plaintiffs and then address the pendent issues, which do not apply to all of the plaintiffs equally.

## Discussion

■ As a preliminary matter we must address defendants' argument that the action should be dismissed for failure to exhaust administrative remedies. The doctrine of exhaustion does not apply here because the action was brought under 42 U.S.C. § 1983. In the landmark decision of *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the United States Supreme Court held that, consistent with congressional intent, exhaustion of administrative remedies is not required under section 1983. The Court acknowledged limited exceptions to the no-exhaustion rule where the claims advanced under section 1983 were *in pari materia* with statutory claims for which Congress intended there to be comprehensive administrative remedies, but such is not the case here. We conclude that this action falls squarely within the no-exhaustion rule of *Patsy.*

## Constitutional Claims

Plaintiffs argue that, by holding them liable for the delinquent electric bills of their tenants, the department is arbitrarily and capriciously depriving them of property in violation of substantive due process. The parties do not dispute that the defendants' practices constitute state action for purposes of the Fourteenth Amendment. There is also no question that the threatened sale of the plaintiffs' property in satisfaction of the purported liens would, if realized, be a deprivation of property sufficient to invoke the constitutional protections sought. The parties' contentions center around the question whether the contemplated deprivations violate plaintiffs' right to substantive due process.

Plaintiffs cite us to numerous cases, but principally rely upon the reasoning of *Davis v. Weir,* 497 F.2d 139 (5th Cir.1974), and those cases which follow it. *Sterling v. Village of Maywood,* 579 F.2d 1350 (7th Cir.1978); *Craft v. Memphis Light, Gas and Water Division,* 534 F.2d 684 (6th Cir.1976);

---

1. It appears that, at least initially, some charges for water and sewerage service were also disputed. Amended Complaint, file exh. 39 (counts II & III); Stipulation of Facts, file exh. 45, ¶ 43. We do not address these, however, because they were not briefed by the parties and because our disposition of the claims herein should be equally applicable to the disputed water and sewerage charges.

*Koger v. Guarino,* 412 F.Supp. 1375 (E.D. Pa.1976). Some of those cases were decided exclusively on equal protection grounds. Some, like *Davis,* touched on both equal protection and substantive due process. All shared the characteristics that the plaintiffs were tenants whose right to service, either original or continued, was conditioned upon payment of delinquent accounts. The charges on these delinquent accounts were incurred variously in the names of either the owners of the premises or the prior occupants. In each case the reviewing court found that the imposition of such a condition was unconstitutional. While we have no quarrel with the reasoning or outcome of these cases, whether decided upon equal protection or due process grounds, we believe that the instant case presents a significantly different situation.

The difference between the cases cited by plaintiff and the instant case was highlighted by the Court of Appeals for the Fifth Circuit only six years after it decided *Davis.* In *Chatham v. Jackson,* 613 F.2d 73 (5th Cir.1980), an action by a property owner to enjoin the defendant city water department from terminating the water supply to an apartment building because of unpaid delinquent charges incurred by a tenant, the Fifth Circuit Court was again asked to consider the constitutionality of imposing liability upon a third party for delinquent utility charges. In upholding the constitutionality of the city's action, the court understandably devoted the bulk of its opinion to distinguishing the facts of *Chatham* from those presented in *Davis.* Two major considerations underlay the *Chatham* court's effort at drawing a distinction. First, there had been an intervening opinion by the Georgia Supreme Court reaffirming the validity of statutorily created liens on real property arising because of delinquent utility charges, and authorizing enforcement of those liens by refusal to provide service to subsequent owners of the property. *Chatham,* 613 F.2d at 76 (citing *Bowery Savings Bank v. DeKalb County,* 240 Ga. 528, 242 S.E.2d 50 (1978)). Second, the court identified certain constitutional and policy-based asymmetries in the relative status of land-lords and tenants. *Chatham,* 613 F.2d at 76. With respect to the first distinction, the *Chatham* court found that the existence of a statute or ordinance authorizing the lien created a sufficient legal basis for withholding service and concluded: "We can imagine many valid reasons for the city's practice, and we do not find it arbitrary to coerce an owner into paying for service that benefitted his property." *Id.* at 78. The latter part of this conclusion summarizes the second basis for the court's distinction of *Davis.* The *Chatham* court observed that the benefit to a tenant from utility service is purely personal while the landlord's benefit derives from his ownership of the serviced property whose value is enhanced. *Id.* at 80. Reasoning from this distinction, the court observed that "it is eminently reasonable for the city to impose a lien and threaten to terminate service to the benefitted property when the service is not paid for. The City's practice seems to be closely related to its objective of dispensing benefits to property only upon payment of proper compensation." *Id.*

Finally, the court buttressed its conclusion by reference to *Dunbar v. City of New York,* 251 U.S. 516, 40 S.Ct. 250, 64 L.Ed. 384 (1920), in which the United States Supreme Court held that imposition and enforcement of liens against the property of a landlord for the unpaid water bills of her tenant did not violate the landlord's substantive due process rights. *Chatham,* 613 F.2d at 81. For reasons we will discuss we conclude that the instant case falls within the pattern addressed by the circuit court in *Chatham,* the reasoning and holding of which we find persuasive. We therefore find *Davis* distinguishable on the same grounds as did the *Chatham* court.

As in *Chatham,* defendants in this case proceeded pursuant to a statutorily authorized lien. Plaintiff raised several objections to the conclusion that the charter of the Village of Morrisville authorizes such a lien, most of which are answered by the Vermont Supreme Court in *Rand v. Marshall,* 84 Vt. 161, 78 A. 790 (1911). In that case, the Vermont court upheld enforce-

ment of a lien authorized by a similar provision in the charter of the Village of Hardwick.[2] In doing so, the court considered a number of factors including: that the lessor requested the installation of service; that the parties acted in the expectation that electricity would be used on the premises; that the Village was not obligated to supply electricity to its residents; and that "[t]he owner can protect himself from liability at any time by directing that no electricity be furnished." *Id.* at 165, 78 A. 790. Plaintiffs seek to distinguish *Rand* on the basis of this last factor, which concededly is not present in the instant case. Aside from pointing out that this is only one of the factors listed by the court in *Rand,* we note

that this issue is disposed of in the *Dunbar* case in which the landlord disclaimed responsibility for water service and the parties covenanted in the lease that the tenant would obtain service in its own name. *Dunbar,* 251 U.S. at 517, 40 S.Ct. at 250–251. There was no showing that the landlord could have caused service to be terminated. The United States Supreme Court held that, despite the agreement between the parties, the preexisting charter provision authorizing a lien warranted a finding that the landlord had impliedly consented to the provision of service and that the challenged lien was valid. *Id.* at 517–18, 40 S.Ct. at 250–251.[3]

2. The Village of Hardwick charter reads in pertinent part as follows:

> SEC. 5. For the purpose of the support of said water and electric light departments, and to insure the payment of the interest on the bonded or other indebtedness of said village on account of said water and electric light plants, and to provide for the final payment of such indebtedness, said village shall establish *rates of rents* to be charged and paid by the users of said water and electric lights, at such times and in such manner as shall be determined by said village, and may from time to time alter, modify, amend, increase or diminish *such rates* and extend them to any description of property or use, as said village may deem proper. *Such rates or rents* shall be chargeable to, and may be collected of, the owners of the property so supplied with water or electric lights, unless otherwise agreed upon by said water and light *commissioners and the owners of such property,* and shall be a lien and charge upon the buildings, lots and other property so supplied, and may be collected in the same manner as any tax assessed by said village corporation. Said village may order water and light *rents* to be paid in advance, and may make all necessary provisions and orders, *relating to the supply or stoppage of water and electric lights as it may think expedient to insure the payment of such rents.* (Emphasis added for note 4, *infra* ).

*See* Defendant's Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment, file exh. 47, attachment.

The Village of Morrisville charter reads in pertinent part as follows:

> SEC. 21. Said corporation shall establish *rates of rent* to be charged and paid by the users of said water, lights and power at such times and in such manner as' it may determine and may alter, modify, increase or diminish *such rates* and extend them to any

description of property or use. *Such rates or rents* with the charges for wiring and piping shall be chargeable to, and may be collected of, the owners of the property supplied with the same, unless otherwise agreed upon by the water and light commissioners and such owners and all *such rents* with charges for wiring and piping shall be a lien and charge upon the buildings, lots, and other property so supplied and may be collected in the same manner as any tax assessed by said corporation. The said corporation may order *all rents for water and light* to be paid in advance and may make all necessary provisions and orders, relating to the supply or stoppage of water and lights as it may deem expedient to insure the payment of *such rents.* [1910 # 313 § 21] (Emphasis added for note 4, *infra* ).

*See* Stipulation of Facts, file exh. 45, attachment A.

3. At oral argument on April 18, 1983, plaintiffs' counsel sought to distinguish *Dunbar* on the basis of letters sent by plaintiffs' counsel to the department, Stipulation of Facts, file exh. 45, attachments B, C, which stated that plaintiffs "no longer [wish] to be served with electricity" at the subject premises, and that plaintiffs "will no longer be responsible for any electric service provided to" those premises. Inasmuch as tenants continued to reside at those premises after the date of these letters, plaintiffs could not order termination of electric service, Stipulation of Facts, file exh. 45, ¶ 38; *see id.* attachment Q, and the first quoted statement above was to no effect. In light of this, the effect of the second quoted statement, if anything, was to bring home to the department the existence of an agreement between the parties allocating responsibility for the electric charges incurred. This is no more than the type of agreement which the Supreme Court in *Dunbar* held to be

Plaintiffs also advance a somewhat technical statutory construction argument, seeking to distinguish the *Rand* opinion and the Hardwick charter from the Morrisville charter because the Hardwick charter authorizes liens for both rates and rents, while the Morrisville charter apparently only authorizes liens for rents. Plaintiffs argue that rates and rents have specific technical meanings in the present context, and that the charges in the present case are rates. This argument ignores the apparent interchangeability with which these terms are used in both charters and in the *Rand* opinion itself.[4] While it is true that village charters, like all municipal charters and ordinances, are not to be construed to grant powers other than those expressly authorized, *Hinesburg Sand & Gravel Co. v. Town of Hinesburg*, 135 Vt. 484, 380 A.2d 64 (1977), and that, in the absence of statutory authorization, a utility may not assert a lien against real property for delinquent charges, *Waldron v. International Water Co.*, 95 Vt. 135, 112 A. 219 (1921), it would be incredibly picayune to rest our decision on a distinction which neither the drafters of the charters nor the court with primary responsibility for interpreting them have seen fit to draw. This is so particularly where the alleged distinction, if drawn, would have effects reaching far beyond this case, stripping the Village of Morrisville of authority to enforce liens for electric rate charges arising against property occupied by owners. Under the circumstances we are not prepared to engage in such a constrained and hypertechnical analysis.

We also see little merit in plaintiff's contention that section 21 of the Morrisville charter was repealed by implication by the Vermont Public Service Board in its Order of July 3, 1979, Docket No. 4255. *See* Stipulation of Facts, file exh. 45, attachment N. Plaintiff does not cite any authority for the proposition that the Public Service Board has the power to repeal provisions of a village charter,[5] nor can we find any. Indeed, it seems clear that such power is vested solely in the Vermont legislature. Even if the July 31, 1979 order had originated in the legislature as a statutory directive we would be loathe to construe it in the way plaintiffs would have us do. Repeal by implication is disfavored, both in Vermont, *State v. Foley*, 140 Vt. 643, 646, 443 A.2d 452, 453 (1982), and in the federal system, *Posadas v. National City Bank*, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936), *cited with approval in Cantor v. Detroit Edison Co.*, 428 U.S. 579, 597–98 n. 37, 96 S.Ct. 3110, 3121 n. 37, 49 L.Ed.2d 1141 (1976).

We conclude then that the charter of the Village of Morrisville authorizes a lien against property for delinquent electric charges, that such a lien may be enforced against the property owner, and that it does not offend the Due Process Clause of the Fourteenth Amendment to do so in the present case.

Before turning to the pendent claims we will briefly address the purported

---

insufficient to vitiate the implied consent of the landlord to provision of service to the subject premises.

4. *See* note 1, *supra*. Plaintiffs argue as follows: "Rates are charges for metered service, and rents represent a fixed sum to be paid periodically for a certain type of service." Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment at 19 (citing Vt.Stat.Ann. tit. 24, § 3311.) Although this section, dealing with the powers of municipal water works, does make such a distinction, this does not alter the fact that the charters and the *Rand* opinion, which predate the statute, do not. The *Rand* opinion contains the following phrases: (a) "In considering the validity of the [charter]

provision making the *rates* chargeable upon the owner . . ." 84 Vt. at 165, 78 A. 790 (emphasis added). "(b) [T]he village informed defendant that . . . he would be held in accordance with the charter for the payment of all *rents* furnished . . . ." *Id.* (emphasis added).

5. In *Valcour v. Village of Morrisville*, 110 Vt. 93, 2 A.2d 312 (1938), cited by plaintiffs, the Vermont Supreme Court held that the Public Service Board had the authority to compel the department to sell electric service to a farm near its lines but not within Morrisville. In that case the department did not seek to interpose a provision of the Village charter to the contrary.

equal protection claim advanced by plaintiffs. Plaintiffs argue that defendants impermissibly distinguish between owners of apartment buildings and other permanent rental structures, and owners of trailer parks which rent space to mobile home owners. The department has a policy of pursuing liens against the former class for delinquent electric charges, but not against the latter for charges incurred by service to the mobile homes. It seems clear to this court that continued provision of electric service, however important to a comfortable and healthy lifestyle, is not a fundamental right guaranteed by the Constitution for purposes of applying the "strict scrutiny" standard of equal protection analysis. *Chatham,* 613 F.2d at 80; *cf. San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973) (holding there is not a fundamental right to education). We will provisionally assume that the standard employed by the circuit court in *Chatham,* the so-called "middle-tier" analysis is applicable in the present case, as it is the most favorable to plaintiff of the remaining options. *Chatham,* 613 F.2d at 79–80. Under that standard, the defendants' actions must (1) ostensibly further an important governmental interest, and (2) bear a substantial relationship to that end. *Craig v. Boren,* 429 U.S. 190, 199–204, 97 S.Ct. 451, 457–461, 50 L.Ed.2d 397 (1976). We find both parts of this test satisfied here. Protection of municipal finances is an important governmental interest. *Chatham,* 613 F.2d at 80; *Dunbar,* 251 U.S. at 518, 40 S.Ct. at 251. Defendants distinguish between the two classes on the grounds that the charter authorizes a lien on the property served and that in the case of a trailer park, the mobile homes are themselves property within the meaning of the charter. Defendants assert that they can and do enforce liens against mobile homes. They additionally note that this makes it unnecessary to try to enforce liens against trailer park owners even if such liens are authorized, and that the existence of valuable property subject to attachment under the liens sufficiently distinguishes mobile home owners from ordinary apartment tenants. We agree and hold that the Village's policy is substantially related to the important governmental interest it seeks to further. There is no violation of the Equal Protection Clause.

### *Validity of an Unrecorded Lien*

We turn next to the question of how the liens authorized under the charter arise. Plaintiff West acquired the Manor House property from the Estate of Rethel C. West. Although the amounts have not been specifically identified, certain of the delinquent electric charges at the Manor House property were incurred during the period it was owned by the estate and others were incurred while it was owned by plaintiff West. Plaintiff West subsequently sold the Manor House property to plaintiffs Nathan and Jane Barbour. It does not appear from the record that any of the charges at the Manor House were incurred after the Barbours took title.[6] The plaintiffs argue that the lien did not arise until it was recorded, which it never was. We agree. The Village Charter specifies that the delinquent charges "shall be a charge upon the ... property so supplied *and may be collected in the same manner as any tax* assessed by the [Village] corporation." Stipulation of Facts, file exh. 45, attachment A (emphasis added).

The only reasonable interpretation of the emphasized language is that the form and scope of the lien shall be determined by reference to the tax lien provisions of the Vermont Statutes, Vt.Stat.Ann. tit. 32, § 5061 (1981). This procedure is also indicated by Vt.Stat.Ann. tit. 24, §§ 3306, 3612 (1974) which specifically incorporate section 5061 for liens arising from water and sewerage charges.

Section 5061 provides that: "(a) Commencing with the date of the filing ... in

---

6. *See* Stipulation of Facts, file exh. 45, ¶¶ 41, 50.

the office of the town clerk of the town, taxes lawfully assessed upon real estate shall be a first lien thereon ...." Although the parties appear to have assumed otherwise,[7] this language is susceptible of more than one interpretation. There is, however, no Vermont case law to guide us in determining whether filing in the public record is a prerequisite to enforcement of the lien. Some support for the proposition that filing is a prerequisite is found by analogy to Vt.Stat.Ann. tit. 32, § 5895 (1981), authorizing liens against real and personal property for delinquent state income tax liability. Section 5895 provides in part:

> The lien shall arise at the time the notification or assessment is made by the commissioner .... The lien shall be valid *as against any subsequent ... purchaser* when notice of the lien and the sum due has been filed by the commissioner with the clerk of the town or city in which the property subject to lien is situated.

(emphasis added). The definition of filing for purposes of this section was the subject of a published opinion of the Vermont attorney general:

> (b) Tax liens: Town clerks should keep a separate book for recording liens .... *Tax liens that affect title to real property should also be* noted in the grantor-grantee index.

1973–1974 Vt. Att'y Gen. Biennial Rep. 214, 215 (emphasis added).

It should be added that, for reasons unexplained in the opinion, the attorney general did not list Vt.Stat.Ann. tit. 32, § 5061 among the sections to which his discussion applied. Whether or not this omission was intentional we cannot say. Elsewhere in the opinion, discussing discharges of tax liens, he does mention section 5061. We also note the absence of any parallel provision to Vt.Stat.Ann. tit. 32, § 5072 (1981) (protecting bona fide purchaser without actual notice from enforcement of a property tax lien on personal property) and Vt.Stat. Ann. tit. 32, § 5078 (1981) (providing fees for recording and discharging of property tax liens on personal property) in the statutory article on property tax liens on real property.

Whether these omissions and absences indicate a fundamental difference between property tax liens on real property and other tax liens on real property or property tax liens on personal property we cannot say to a certainty. Given this uncertainty, and given the tacit assumption by defendants that section 5061 requires filing as a prerequisite to creation of the lien, we adopt the prudent course and read section 5061 to so require. This filing requirement also comports with the policy behind Vermont's recording statute, Vt.Stat.Ann. tit. 27 §§ 341, 342 (1975), which operates to require parties claiming an interest in land to record their interest in the town records so that subsequent purchasers will have notice.

Defendants argue that we should not impose such a requirement for liens arising from electric charges because the Vermont statutes, while addressing water and sewerage charges, are silent on electric charges. We see no reason, however, to treat electric charges differently, particularly in view of the language of the charter, referring as it does to tax liens. Further, we find it wholly inconsistent with the policy of providing notice to subsequent purchasers, evidenced by the tax lien statute and the water and sewerage lien statutes, to treat liens arising from electric charges differently. Unlike property taxes and water and sewerage charges, electric charges give rise to liens in relatively few municipalities so purchasers

---

7. "This case is governed by Vermont law and any liens that may exist in favor of the Village must conform to 32 V.S.A. § 5061. Under this section liens do nor [sic] arise until they are recorded." Plaintiffs' Reply Memorandum at 8, file exh. 46 (April 5, 1982). "Taxes are made a lien upon real estate by a filing with the town clerk. 32 V.S.A. § 5061(a)." Defendants' Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment at 8, file exh. 47 (April 7, 1982).

would be less likely to be on their guard for the possibility of liens arising from delinquent electric charges and a notice provision would be that much more important.

■ We therefore hold that the liens for charges on the house incurred while it was owned by the Estate of Rethel C. West and later by plaintiff Ethel West may not be enforced against subsequent owners. The Barbours therefore took the Manor House property free from all liens.[8] Because the liens are charges against the property not personal obligations of the owner, *see Chatham*, 613 F.2d at 80, plaintiff West also owes nothing with respect to the Manor House property.[9] Because of our disposition of this claim and because the estate is not a party to this action, it is unnecessary to address the issue of the initial validity of the claims against the estate under Vt.Stat. Ann. tit. 14, § 1203 (Supp.1982).

*Conclusion*

For the reasons set forth above, the summary judgment motion of plaintiffs Nathan and Jane Barbour is granted. The summary judgment motion of defendants is granted against plaintiff West for the claims arising from the lien on the Kelly Block. The summary judgment motion of plaintiff West is granted for the claims arising from the lien on the Manor House property.

---

**8.** *See* Stipulation of Facts, file exh. 45, ¶¶ 41, 45, 46, 50.

**9.** Although it is easy to lose sight of the fact in the maze of issues presented in this case, it should be remembered that nothing we decide here affects the continued personal liability of the tenants who incurred the underlying electric charges.