**Edith WEST, Appellant,**

**v.**

**VILLAGE OF MORRISVILLE and Robert Bourne, Richard Hill, Dayton Wakefield, Howard Morse, Bruno Laoti, individually and collectively as its Water and Light Commissioners, and Richard Sargent, Mary Kuntsman, Duane Sprague, Andrew Jensvold, Richard Shanley, individually and collectively as its Board of Trustees, and Robert Page, its Water and Light Superintendent, and William Pickens, its Water and Light Assistant Superintendent, and C.R. Whittier, its Agent and Tax Collector, Appellees.**

**No. 538, Docket 83–7617.**

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 1983.

Decided Feb. 14, 1984.

Gary H. Barnes, South Burlington, Vt. (Downs, Rachlin & Martin, South Burlington, Vt., of counsel), for appellant.

Anthony B. Lamb, Burlington, Vt. (Paul, Frank & Collins, Inc., Burlington, Vt., of counsel), for appellees.

Before FEINBERG, Chief Judge, and OAKES and PIERCE, Circuit Judges.

OAKES, Circuit Judge:

This novel case involves a small amount of money but notable questions of constitutional principle, including questions of substantive and procedural due process, as well as the clash of the takings clause of the Fifth Amendment with the police power, an area at the cutting edge of constitutional analysis today.[1] At the same time those constitutional issues may not be reached if certain questions of state law on which they turn are resolved in certain ways. The United States District Court for the District of Vermont, Albert W. Coffrin, Chief Judge, resolved the case on cross-motions for summary judgment. *West v. Village of Morrisville*, 563 F.Supp. 1101 (D.Vt.1983). Because there are readily available speedy and efficient ways of resolving those state law issues in the state courts or perhaps administrative agencies, prudential considerations, *see Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 341, 346–48, 56 S.Ct. 466, 480, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), dictate that the federal court abstain from decision in this case, *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), until these state questions are thus resolved. This is true even though abstention was not sought by either party or considered by the court below, and is opposed by both parties here. *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480 n. 11, 97 S.Ct. 1898, 1904 n. 11, 52 L.Ed.2d 513 (1977).

---

1. Costonis, *Presumptive and Per Se Takings: A Decisional Model for the Taking Issue*, 58 N.Y. U.L.Rev. 465 (1983); *see San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981).

*Facts*

The Village of Morrisville, Vermont, initially operated its own water and light department (the Department) by virtue of its municipal charter, a grant from the legislature. The Department is now subject to regulation as a public utility, like other privately owned utilities, by the Vermont Public Service Board (PSB), by virtue of a general statute, 30 Vt.Stat.Ann. § 203 (Supp.1983). The municipal charter contains an unusual, if not unique, provision that purports to make landlords responsible for their tenants' electric bills. That provision says:

> Said [Village] shall establish rates of rent to be charged and paid by the users of said water, lights and power at such times and in such manner as it may determine and may alter, modify, increase or diminish such rates and extend them to any description of property or use. Such rates or rents with the charges for wiring and piping shall be chargeable to and may be collected of, the owners of the property supplied with the same, unless otherwise agreed upon by the water and light commissioners and such owners and all such rents with charges for wiring and piping shall be a lien and charge upon the buildings, lots, and other property so supplied and may be collected in the same manner as any tax assessed by said [Village]. The said [Village] may order all rents for water and light to be paid in advance and may make all necessary provisions and orders, relating to the supply or stoppage of water and lights as it may deem expedient to insure the payment of such rents.

1910 Vermont Acts No. 313, § 21.

Mrs. Edith West, owner of the "Kelly Block" in Morrisville, Vermont, has had several tenants to whom electric service was provided by the Morrisville Water & Light Department. In May, 1977, her attorney wrote the Department that she no longer wanted electrical service and would not be responsible for any service provided. The Department replied that it would honor tenants' requests for service and would bill them directly, but would also bill Mrs. West simultaneously and hold her and her property responsible for payment of any arrearages. Thereafter Mrs. West told her tenants to ask the Department directly for electrical service, gave them forms for this purpose, and advised the Department whenever a new tenant took over. About this time, the Department began sending monthly bills to the tenants only. No further bills were sent to the landlord until accounts became delinquent.

In May, 1980, the Department sent disconnect notices to Mrs. West advising her of arrearages and of the right to submit grievances to the Consumer Affairs Division of the Vermont Public Service Department (a right which Mrs. West has not exercised). On May 7, 1980, the Water & Light Department sent Mrs. West a letter listing six delinquent accounts totaling some $294 in arrearages[2] and giving her until May 15 to pay up, in the absence of which the accounts would be turned over to the tax collector to collect under the above quoted section 21 of the charter. These amounts were eventually paid under protest.

Meanwhile the Water & Light Department filed a petition for a rate increase with the PSB, Docket No. 4255, on which hearings were held in January, 1978. The old tariff had stated that "[a]ll bills will be rendered in the name of the property Owner." This was objected to by a Consumer Affairs Representative at the State Department of Public Service, Thomas Whalen,

---

**2.** A number of those accounts were those of tenants living at another property in which Mrs. West was interested; the district court held, however, that this property was not properly subject to a lien. The Village did not appeal that portion of the decision. As a result, the amount in controversy in this appeal is one tenant's $42.80 unpaid bill less the $25.00 security deposit retained by the Village, plus a $1.42 penalty, for a total due of $19.22. Mrs. West is also asking for interest on that amount, costs, and attorneys fees, as well as injunctive and declaratory relief. For the record, general orders of the PSB permitted the Department to require a deposit equal to two months' estimated billings and to disconnect when a bill was delinquent in an amount of $25 or more.

because, among other reasons, it did not encourage energy conservation. As the PSB order of July 3, 1979, noted:

> It was Mr. Whalen's opinion that a tenant who was billed directly and is responsible for payment of bills will be more inclined to be energy-conscious than one not receiving a bill. Mr. Whalen also testified that billing directly to tenants will prevent the use of nonpayment as a tool by landlords to force a tenant to move out; would prevent a tenant from being denied electric service because a predecessor or a landlord failed to pay a previous bill; and would prevent the landlord from being penalized for failing to meet an obligation which is not properly his.

The PSB thus ordered the Department to file rate schedules consistent with its findings. The Department then filed a new rate schedule providing that "[a]ll bills will be rendered in the name of the property Owner, unless service is requested in the tenant's name."

It was after this proceeding in the PSB that the May 7, 1980, notice by the Department to Mrs. West was sent. When Mrs. West did not pay, the Village tax collector sent delinquent tax notices to her, eventually made a nonpossessory levy, and scheduled a tax sale. It was then that Mrs. West paid her taxes under protest, and thereafter commenced suit in federal court pursuant to 42 U.S.C. § 1983 (1976).

### Arguments of the Parties

The landlord argues that the "threshold question" is "whether the Village has the right under State law to levy upon and sell a landlord's property in satisfaction of an absconding tenant's unpaid electric bill." The argument is that the Village charter authorizes only liens for electric "rents," not "rates," terms which the district court found interchangeable. 563 F.Supp. at 1105. Mrs. West makes an elaborate argument relying on Vermont cases that charters are to be strictly construed, and that so construed the charter here permits only "rents with charges for wiring and piping" to constitute liens against the property

owner, an argument which she says is bolstered by a long-term history of the Department's leasing appliances and providing wiring, installation, and repair services. The different language in the Village of Hardwick's charter ("rates *of* rents") (emphasis supplied) is also urged upon us. The Village, of course, takes an opposing view.

Mrs. West also argues that the PSB order in the rate case as a matter of state law prohibits the Village from holding landlords responsible for tenants' unpaid bills. The district court had construed the PSB order otherwise and also concluded that, even if the order did prohibit the Village, the PSB could not repeal provisions of the Village charter. 563 F.Supp. at 1105. Mrs. West argues that both determinations were incorrect and the Village argues contrariwise.

Mrs. West's federal claims are that the Village charter, insofar as it seeks to hold a landlord responsible for tenants' bills, violates the landlord's substantive due process rights and is bad "on public policy grounds," referring to the Public Utility Regulatory Policies Act of 1978, 16 U.S.C. §§ 2601–2645 (Supp. V 1981). Finally Mrs. West argues that she is deprived of procedural due process under, *e.g., Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and progeny, *but see, e.g., Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974), since she was not notified that a lien would be filed against her and since Vermont tax collection procedures do not facially provide an opportunity to be heard by an impartial judicial tribunal prior to levy or sale. Each constitutional argument is, of course, vigorously disputed by the Village, which also claims that its notice of disconnect gave the landlord ample opportunity to contest the disconnections in PSB proceedings.

### Discussion

■ This case plainly involves three basic questions of state law, at least two of which must be decided before the constitutional questions are reached.

1. Does the Village Charter permit the landlord to be held responsible for tenants' failures to pay for electricity ("rates") as opposed to rents (for appliances, wiring, etc.)? If answered negatively, Mrs. West wins, and the other statutory and constitutional questions are not reached.

2. Is the PSB order in the rate proceeding inconsistent with the Village Charter provision that permits the landlord to be held responsible for tenants' failure to pay for electricity?[3] If answered affirmatively, the third question of state law is reached.

3. Does the PSB order, issued under the general statutory powers of the PSB, prevail over the Village charter (assuming its construction is that urged by the Village) under state law, or would that be an improper "repeal" of the charter?

Each of these three questions of state law are interesting questions with authorities and arguments running both ways. For example, in respect to the last question, while the Village argues that the legislature may not delegate its essential legislative functions or permit the PSB to repeal municipal charters, *Village of Waterbury v. Melendy,* 109 Vt. 441, 448, 199 A. 236, 239 (1938), a special question nevertheless remains, whether the general delegation of power to the PSB to regulate municipal utilities and to

make orders and decrees in all matters provided for in the charter or articles of

any corporation owning or operating any plant, line or property . . . and [to] have like jurisdiction in all matters respecting:

.     .     .     .

(3) The manner of operating and conducting any business subject to supervision under this chapter, so as to be reasonable and expedient, and to promote the safety, convenience and accommodation of the public;

(4) The price, toll, rate or rental charged by any company subject to supervision under this chapter, when unreasonable or in violation of law;

.     .     .     .

(6) To restrain any company subject to supervision under this chapter from violations of law, unjust discriminations, usurpation or extortion . . .[,]

30 Vt.Stat.Ann. § 209(a) (Supp.1983), gave the Board authority to change this billing procedure and charter provision.[4]

Here, where there are complicated issues of unresolved federal constitutional law that may well be mooted by state court determination of equally complex and unresolved issues of state law, federal court abstention is appropriate. *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *McRedmond v. Wilson,* 533 F.2d 757, 760–61 (2d Cir. 1976). Though abstention was traditionally

---

**3.** This question has not been answered by the PSB or the Vermont courts.

**4.** There is no doubt that the Village is subject to the general jurisdiction of the Board. The Village claims that the Board lacked any authority to repeal by implication any particular section of a Village Charter, and there is authority that a special act prevails over a general statute. *Bayley v. Harvey,* 111 Vt. 339, 342, 16 A.2d 192, 194 (1940). At the same time there is authority to the effect that the statute which is later in time will prevail. *Town of Bennington v. Vail,* 117 Vt. 395, 399, 92 A.2d 467, 469 (1952). As put in the case of *Troy Conference Academy v. Town of Poultney,* "there is no rule which prohibits the repeal by implication of a special or specific act by a general one[,]" the conclusion being "always one of legislative intention . . . ." 115 Vt. 480, 485, 66 A.2d 2, 6 (1949) (citing for repeal of special charter pro-

vision by general acts *Magwire v. Village of Springfield,* 111 Vt. 414, 17 A.2d 260 (1941), and *City of Hartford v. Hartford Theological Seminary,* 66 Conn. 475, 34 A. 483 (1895)). Certainly where a given problem calls for statewide uniformity, the later general law may supercede local or municipal laws and repeal inconsistent special statutes. *McDonald v. Justices of Superior Court,* 299 Mass. 321, 13 N.E.2d 16 (1938). Thus, we think that the district court's view that the Public Service Board does not have "the power to repeal provisions of a village charter," 563 F.Supp. at 1105, will not necessarily be followed by the Vermont Supreme Court in construing the later general act vesting complete jurisdiction in the PSB over municipal utilities, 30 Vt.Stat.Ann. § 203 (Supp.1983). This holds true even though repeal by implication is disfavored in Vermont. *State v. Foley,* 140 Vt. 643, 646, 443 A.2d 452, 453 (1982).

considered a function of the court's equity powers, there is authority for using it, as here, in a case asking in part for damages, see *Clay v. Sun Insurance Office Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), and, in particular, in a section 1983 action seeking damages, see *Boehning v. Indiana State Employees Association, Inc.,* 423 U.S. 6, 6, 96 S.Ct. 168, 169, 46 L.Ed.2d 148 (1975) (per curiam). Abstention is also appropriate here because there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case ... at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), citing, inter alia, *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (scope of eminent domain power of municipalities under state law) and *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (challenge to reasonableness of state commission's permit to drill oil potentially disruptive of state's elaborate review system and regulatory policies).

■ Though abstention is not necessarily appropriate whenever a possibly determinative state law issue is present and has not been ruled on by the state's highest court, *Meredith v. City of Winter Haven,* 320 U.S. 228, 234–35, 64 S.Ct. 7, 11, 88 L.Ed. 9 (1943), it has often been invoked when one of the central issues in the litigation is whether a challenged ordinance is authorized by state statute, or whether the ordinance permits the activity challenged in the litigation. *E.g., Carey v. Sugar,* 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) (per curiam); *Boehning v. Indiana State Employees Association, Inc.,* 423 U.S. at 6, 96 S.Ct. at 169; *Stone v. Philbrook,* 528 F.2d 1084 (2d Cir. 1975).

Abstention by the federal courts inevitably causes some delay and added expense, and forces a plaintiff into a forum she did not choose. It should therefore be used only in exceptional circumstances. *Colorado River Water Conservation District,* 424 U.S. at 813–17, 96 S.Ct. at 1244–46. Here, however, the harm to the plaintiff is little, and it is appropriate to stay our hand in deference to the state agency and courts, which will be able to determine the state law issues that may well end this litigation.

■ Perhaps the most significant danger attendant upon federal court abstention is the risk that plaintiff will lose the chance to litigate her constitutional issue in federal court, assuming that the state issues do not determine the outcome. Appellant faces no such problem here, for we herein order the district court to retain jurisdiction in this case, see *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 88 n. 14, 95 S.Ct. 870, 877 n. 14, 43 L.Ed.2d 32 (1975), so that the appellant is free to return to the federal court if federal issues remain after the state determination of state law.[5]

Nor will abstention in this case cause inordinate delay or inconvenience, often one of the major drawbacks in invoking the abstention doctrine. *See United States v. Leiter Minerals, Inc.,* 381 U.S. 413, 85 S.Ct. 1575, 14 L.Ed.2d 692 (1965) (dismissed as moot eight years after abstention ordered). There is no danger of a statute of limitations expiring on the federal action, as we shall retain jurisdiction in this matter. Nor will the delay moot the issue in a way which would leave the injured appellant without remedy, as can sometimes happen, for example, when First Amendment claims for injunctive relief are not immediately addressed. *E.g., Procunier v. Martinez,* 416 U.S. 396, 404, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974). Whether the state six year statute of limitations for civil actions generally, 12 Vt.Stat.Ann. § 511 (1973), or the one year statute for actions to recover taxes paid under protest, *id.* § 517, and 32 Vt. Stat.Ann. § 5295(4) (1981), is applicable, the

---

5. Appellant is also free, of course, to let the state court determine all of the issues in this case if she so chooses. The choice is hers: if she wishes to preserve her federal issues (should they remain) for federal court determi-nation, she should simply reserve the relevant federal issues in the state court proceedings. *See England v. Louisiana State Board of Medical Examiners,* 375 U.S. 411, 421, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964).

limitations period for initiating action in the state courts was tolled by this action brought in federal court by statute, 12 Vt. Stat.Ann. § 558(a) (Supp.1983), as construed in *Leno v. Meunier,* 125 Vt. 30, 37, 209 A.2d 485, 491 (1965) (dismissal of federal action for lack of jurisdiction; statute tolled).[6] Finally, we take judicial notice that the Vermont state court system functions efficiently and speedily to determine the cases before it. Dockets are well caught up and appellant can expect a quick resolution of its state law questions.[7]

More generally, this is not among the class of cases where abstention is usually inappropriate. *E.g., Mayor v. Educational Equality League,* 415 U.S. 605, 628, 94 S.Ct. 1323, 1337, 39 L.Ed.2d 630 (1974) (equal protection civil rights case brought under section 1984); *Examining Board of Engineers v. Flores De Otero,* 426 U.S. 572, 597–98, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976) (challenge to state constitutional provision which mirrors a federal constitutional provision); *Kusper v. Pontikes,* 414 U.S. 51, 55, 94 S.Ct. 303, 306, 38 L.Ed.2d 260 (1973) (state law not realistically susceptible to interpretation that will moot difficult constitutional question); *Wisconsin v. Constantineau,* 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971) (no ambiguity in state statute); *Propper v. Clark,* 337 U.S. 472, 490, 69 S.Ct. 1333, 1343, 93 L.Ed. 1480 (1949) (federal issue is statutory, not constitutional).

The parties have urged us not to abstain. We decline, for reasons stated. We vacate that part of the district court judgment appealed from, and direct that the district court hold this case in abeyance for possible resolution of the federal constitutional questions only if the state law determinations are made by the state courts or agencies so as to require that resolution.

Judgment vacated; costs to neither party.

---

6. If the Vermont courts were to take a different view, despite the rule that the tolling statute is remedial and to be liberally construed, *Hayden v. Caledonia Nat'l Bank,* 112 Vt. 491, 494, 28 A.2d 389, 390 (1942), our order to abstain would be subject to withdrawal. Technically speaking a case as to which the *Pullman* doctrine is applied by the federal court is not one involving a lack of jurisdiction. *See* C. Wright, *Law of Federal Courts* 218 (3d ed. 1976). It does, however, involve "the postponement of its exercise," *Harrison v. NAACP,* 360 U.S. 167, 177, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152 (1959), and hence presumably falls within the Vermont tolling statute or a liberal interpretation thereof, especially since application of the *Pullman* doctrine may involve a dismissal of the federal action.

7. Obviously, abstention puts the parties to the added cost of pursuing a remedy in a new forum. If appellant is concerned about costs, however, she remains free to pursue this matter in a Vermont Public Service Board procedure, or in a declaratory judgment action in Vermont Superior Court, either action being probably less expensive than maintaining a section 1983 action in state or federal court. Useful state procedures are readily available. For

example, a definitive construction of the relevant section of the Village charter could be ascertained through a declaratory judgment action in the county court. 12 Vt.Stat.Ann. §§ 4711–4725 (1973). It is also possible for the lower court to certify a question of law to the Supreme Court before passing final judgment. *Id.* § 2386. The PSB order as interpreted by the Village can be challenged by Mrs. West in a PSB administrative proceeding. 30 Vt.Stat. Ann. §§ 208, 209 (Supp.1983), and any decision of the PSB can be appealed directly to the Supreme Court. 30 Vt.Stat.Ann. §§ 12, 14 (1970 & Supp.1983); 12 Vt.Stat.Ann. §§ 2381– 90 (1973). The PSB is also authorized to certify questions of law to the Supreme Court before it makes a final judgment. 30 Vt.Stat.Ann. § 12 (Supp.1983). While there is, of course, no requirement that appellant exhaust state judicial remedies, *Board of Regents v. Tomanio,* 446 U.S. 478, 490–91, 100 S.Ct. 1790, 1798, 64 L.Ed.2d 440 (1980), or state administrative remedies, *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982), before maintaining a section 1983 action, appellant may nonetheless find it useful and efficient to pursue remedies available under local law before pursuing this section 1983 action further.